[No. 3,510]

## JOHN S. KIMBALL v. A. W. MACPHERSON.

SALE OF THE SHORE OF THE OCEAN BELOW HIGH TIDE.—The Act of March 28th, 1868, for the sale of lands belonging to the State, does not authorize the sale of the beach of the ocean below high tide.

IDEM.—Nothing short of a very explicit provision in the law to that effect will justify the Court in holding that the Legislature intended to permit the shore of the ocean, between high and low-water mark, to be converted into private ownership.

APPEAL from the District Court of the Seventh Judicial District, County of Mendocino.

The defendant appealed.

The other facts are stated in the opinion.

The Judge of the District Court, the Hon. WILLIAM C. WALLACE, in his conclusions of law, uses the following language :

"In regard to the merits of the case I am compelled to say that the land sought to be purchased, in my opinion is not of the character that the Legislature intended to sell. Either the Legislature has established a most pernicious system, or a good, wholesome one has been provided, and this application, as well as many others, develops an attempt to apply it to a purpose never intended by the Legislature. The Act under which the plaintiff and defendant proceed is the embodiment of all the former attempts at the ablishmant of a wholesome system, and is complete within itself. The twenty-eighth section of the Act of 1868, p. 514 (of the Session Acts), sets forth the character of lands for sale ; section twenty-nine provides who may be the purchaser and how the purchase shall be made, and the manner of procuring the title from the State. The following sections from thirtieth to fiftieth inclusive, being the remainder of Part Eleventh from page five hundred and fourteen to five hundred and twenty-one inclusive, provides for a system of reclamation. The forty-third section provides for the formation of districts for the purpose of reclaiming of 'swamp and overflowed, salt, marsh, and tide lands.' There is no distinction in the Act ; all those qualities are intended to be reclaimed. This Act embodies the leading features of all former acts.

"This view is sustained by the case of the *People* v. *Morrill*, 26 Cal. p. 346. In that case the Court uses the follow ing language, on page three hundred and fifty-eight : ' If

the Legislature, by the Act of May 14th, 1861, to secure the reclamation of the public lands, except by the sale of such as were themselves reclaimable, then it must be held to have abandoned a policy not only sensible in itself, but one which had become traditional also.' This language applies with peculiar force to the Act under which these proceedings were instituted, passed seven years after.

"The same idea is again promulgated in the case of *Taylor* v. *Underhill*, 40 Cal. p. 471. On page four hundred and seventy-two the Court says 'it found that the land in controversy is below high-water mark and that the tide ebbs and flows over it; and, as a conclusion of law, that neither party could purchase the land as swamp and overflowed land.' On page four hundred and seventy-three the Court says, 'Upon the facts found in this case, there can be no doubt that the certificate of purchase was improperly issued to defendant,' etc. Again, on the same page, 'The State can probably sell the land and authorize the purchaser to extend the water front so as to enable him to build upon this land, but this must be done in the interest of commerce, and that must be first determined by the Legislature.' The same authority, on the last named page, denominates the sloping bank of the Sacramento River ' a part of the bed of the river.' If that is so, much more forcibly is ' the sand beach on the seashore' a part of the bed of the ocean."

*Bond & Kelton*, for Appellant.

The Act of 1868 (Stat. 1867–8, p. 514) establishes a State Land Office. Section twenty-eight says : "The * * * tide lands belonging to the State shall be sold at the rate of one dollar per acre," etc (without reservation); while section twenty-nine provides the course to be pursued by any resident who desires to purchase * * * any portion of the

tide lands belonging to the State above low tide.    The Court below, in construing this statute, holds that it provides only for the sale of such tide lands as are susceptible of reclamation under subsequent sections of the same Act.    To meet this opinion, we simply invite a careful perusal of the subsequent sections of the Act, and submit that it contains no provision restricting the sale of tide lands to the latter class.

Section twenty-nine provides the course to be pursued by any resident who desires to purchase any portion of the tide lands belonging to the State above low tide.    Nowhere do we find any words restricting the tide lands to any particular character.    It is true that the Legislature, by the same Act, sections thirty to fifty, has provided a system of reclamation for such of the salt, marsh, and tide lands as are susceptible of reclamation; but we submit that, from the existence of such a system, it does not necessarily follow that the State can sell no part of the tide lands except such as can be reclaimed in the manner provided.    The case of the *People* v. *Morrill*, 26 Cal. p. 346, is cited in support of the decision below.

This decision was made upon an application to purchase lands which lay below high tide, under a law which provided alone for the sale of swamp and overflowed lands, which belonged to the State by grant of Congress, September 28th, 1850 ; and was rendered long prior to the passage of any law authorizing the sale of the land which belonged to the State by reason of her sovereignty.

*George Cadwalader,* for Respondent.

By the case of the *People* v. *Morrill,* 26 Cal. 336, the term "tide lands" acquired a distinct judicial meaning, as being a class of lands which lie below ordinary high-water mark, but which are capable of reclamation.

The Act of March 28th, 1868, carried out the same policy as the previous Acts, and made the proceeds of the sales of

the tide lands go into the Fund for "reclamation purposes," and by every reasonable intendment adopted the definition of tide lands subject to sale laid down in the case of the *People* v. *Morrill.*

By the COURT:

A contest having arisen before the State Surveyor General, whether the plaintiff or the defendant was entitled to enter a small parcel of tide land on the shore of the ocean, the controversy was referred to the District Court, which decided that the land is not subject to entry, and, consequently, that neither of the parties is entitled to enter it. The Court finds that the land sought to be entered "is a sand beach at low tide and is covered by the ordinary high tides, and is between the marks of high tide and deep water; that the said land is not susceptible of reclamation and can be put to no useful purpose, except in connection with a wharf or some other superstructure for commercial or navigation purposes; that the said land is not susceptible of use for agricultural, grazing, or pasturage purposes; that the said premises comprise a part of the bed of the ocean."

We agree with the District Court that it was not the intention of the Legislature to permit a sand beach on the shore of the ocean, between ordinary high and low-water marks, to be converted into private proprietorship under the Act of March 28th, 1868. (Stats. 1867–8, p. 514.) In *People* v. *Morrill*, 26 Cal. 336, it was decided that under the Acts of April 21st, 1858, and May 13th, 1861, regulating the sale of swamp and overflowed and tide lands, the shore of the ocean between ordinary high and low-water marks, and which was not susceptible of reclamation, so as to be made useful for agricultural purposes, could not be entered and converted into private ownership. The same proposition was reaffirmed in *Taylor* v. *Underhill*, 40 Cal. 471. These

decisions are decisive of this case, unless the Act of March 28th, 1868, has modified the former statutes so as to permit lands of this description to be entered.

Without attempting an analysis of the last named Act, it will suffice to say that, in our opinion, it has not had that effect. It is apparent from many of its provisions that it was not intended to authorize the sale of a class of tide lands which before then had not been subject to entry. But the chief purpose of that Act was to reduce into one harmonious system all previous provisions for the sale of overflowed, swamp, and tide lands, and other land belonging to the State, and to provide for the reclamation of the first named classes. But it contains no provision from which it can justly be inferred that it was intended to enlarge its scope, so as to include a class of tide lands which theretofore had not been subject to entry. Nothing short of a very explicit provision to that effect would justify us in holding that the Legislature intended to permit the shore of the ocean, between high and low water mark, to be converted into private ownership.

Judgment affirmed.