[S. F. No. 1840. In Bank. — March 2, 1901.]

·THE PEOPLE ex rel. ROBERT W. ROBARTS, Plaintiff and Appellant, v. W. N. RUSS and Z. RUSS AND SONS COMPANY, Defendants and Respondents.

RECLAMATION OF SWAMP AND TIDE LAND — DAMMING TRIBUTARY TO NAVIGABLE STREAM. — The owners of swamp-land, or of ·marsh and tide land, purchased from the state, have no rights in the reclamation of their lands, superior to the rights of the public to the use of navigable streams; and if a tributary to a navigable stream is necessary to its navigability, the owner of such land upon which the tributary is situated has no right to dam it in order to effect the reclamation of his land.

ID. — PUBLIC NUISANCE — ACTION BY STATE — FINDINGS — OMISSION OF MATERIAL FINDING. — In an action by the state to abate as a public nuisance the damming of sloughs by the owner of marsh and tide lands, seeking to reclaim the same, where it appeared that the water in the sloughs came from the ocean, over Eel River Bar and through Salt River, a navigable stream, and rose and fell with the tide, and issues were joined both as to the navigability of the sloughs, and as to whether the dam substantially interfered with the navigability of Salt River and Eel River Bar, mere findings to the effect that the sloughs were not navigable cannot support a judgment for the defendant; and the omission expressly to find upon the material ·issue as to interference with the navigable streams to which the sloughs were tributary, is ground for reversal.

ID. — DAMS UPON NON-NAVIGABLE SLOUGHS — OBSTRUCTION OF NAVIGABLE STREAM. — If the dams upon these sloughs, though the sloughs be not themselves navigable, result in the obstruction of Salt River as a navigable stream, they constitute a public nuisance.

ID. — USE OF PROPERTY CREATING PUBLIC NUISANCE. — No man may use his own property so as to create a public nuisance; and the owner of tide-lands is forbidden by section 2 of article XV of the constitution of the state to obstruct the free navigation of any navigable water in the state.

APPEAL from an order of·the Superior Court of Humboldt County denying a new trial. E. W. Wilson, Judge.

The facts are stated in the opinion of the court.

L. F. Puter, and C. M. Wheeler, for Appellant.

J. H. G. Weaver, and W. F. Clyborne, for Respondents.

GAROUTTE, J.— Defendants were the owners of a certain tract of marsh and tide land under patents from the state of California. A navigable stream known as Salt River bordered this land upon one side. Certain tributaries of this river, designated as sloughs, penetrated these lands of defendants in various directions. The water in these sloughs came from the ocean by way of Salt River, and rose and fell with the tides. For the purpose of reclaiming their lands, defendants erected dams across these sloughs, thus preventing the waters of Salt River from ebbing and flowing therein. The state, upon the relation of one Robarts, brought the present action to abate these dams, claiming them to be public nuisances. This claim is based upon two grounds: 1. It is alleged that these various sloughs are navigable streams, and for that reason dams erected therein constitute a public nuisance. 2. It is alleged that by the erection of these dams the tidal area of Salt River is decreased; that the amount of water ebbing and flowing therein is likewise decreased; and that the daily action of these tidal waters flowing in the aforesaid sloughs and river kept the channel of said river and of Eel River Bar, its outlet, deep and navigable, and prevented the filling up of said river and Eel River Bar with *débris* and sediment. It is then alleged that these dams, by reason of said causes, obstructed the free passage, use, and navigation in the customary manner of Salt River and Eel River Bar. Issue was joined upon both of these theories of the complaint, and after the testimony of many witnesses had been given, the court made its findings of fact. The pivotal questions in the case rest upon a few of these findings, and the present appeal being from an order denying a motion for a new trial, the sufficiency of the evidence to support them is one of the matters directly confronting us.

1. It is found as a fact that these certain sloughs, tributaries of Salt River, are not navigable streams.

2. It is also found "that the reclamation of the said land, and the damming of said Jacks Slough and said sloughs A, B, and C, as hereinbefore found, lessens the tidal area of said Salt River and Eel River, but, other than the reclamation of such land and the damming of said sloughs, the said defendants have not, nor have either thereof, in any manner, or at all, obstructed or interfered with the free or any passage or use of said Salt River or Eel River Bar."

3. It is also found "that said defendants have not, nor have

either thereof, unlawfully or otherwise, obstructed the free or other passage or use, in the customary or any manner, of a navigable river or stream, or any public highway."

Upon these findings of fact judgment was entered for defendants.

This court has had some trouble in arriving at a proper understanding of findings here numbered 2 and 3. Upon first inspection these two findings appear to be inconsistent, for the first declares that defendants have not obstructed or interfered with the free use of Salt River or Eel River Bar, other than by the erection of the aforesaid dams; while the other finding declares that defendants have not obstructed the free passage and use of any navigable river or stream. But, upon careful consideration, we are satisfied the inconsistency in these findings is not real.

The trial court, having first found that these sloughs were not navigable streams in fact, then made the finding that the dams were not obstructions to navigable streams; and when it referred to "streams," it had in mind the aforesaid sloughs. This is made entirely plain when we read the carefully considered opinion of the trial court, found in the briefs, for it is there said: "It will be seen from the reading of this section that before the people are entitled to a judgment in their favor, it must be shown, among other things, not only that the alleged obstruction was an *unlawful one*, but also that the sloughs in question were in fact navigable sloughs." And again the court says: "If the sloughs in question be non-navigable, there is no doubt but that the people could not recover in the action." And again the court says: "The elimination from the case of this element makes it quite certain that the only matters, if any, of which the state could complain would be the damming of the sloughs in question, and the title to the bed of which is seen and has been found to be in the defendants."

It will thus be observed that the trial court held the pivotal point in the case to be the one of navigability or non-navigability of the sloughs tributary to Salt River; yet this was only one of the pivotal points in the case. There was another, equally important to the plaintiff,—namely, Did these dams materially affect the navigability of Salt River and Eel River Bar? It was so alleged in the complaint, and was denied in the answer. It may be said that the evidence was sufficient to support the finding of fact as to the non-navigable character

of these sloughs. But we find no finding of fact in the record directly responsive to the allegation that these dams substantially interfered with the navigability of Salt River and Eel River Bar. A great mass of evidence was offered upon that issue, and an express finding of fact upon it was demanded. Finding 2 indirectly declares that these dams had a deleterious effect upon Salt River and Eel River Bar, but the character and extent of the effect is not found.

The trial court has intimated, in its opinion, that defendant, having the right to reclaim its lands, was entitled to carry out its system of reclamation, even though its acts resulted in serious detriment to navigable streams. We find it using this language: "The act of reclamation was therefore undoubtedly authorized by Federal and state governments, and the owners of these lands cannot be held to have violated any law, simply because the tidal areas of navigable streams were thus reduced, and by reason thereof less water was thereby caused to flow in or out of such streams near at hand." If this intimation of the court goes to the extent of declaring that the owners of swamp and tide lands have rights in the reclamation of those lands superior to and above the rights of the public to the use of navigable streams, the proposition cannot be maintained in law; for if a tributary of a navigable stream be necessary to its navigability, then the owner of the land upon which this tributary is situated has no right to dam it in order to effect the reclamation of his land. The Swamp and Overflowed Land Act does not purport to give the owner that right, even conceding such a power in the state, and the right of the public in the use of a stream, as a public highway, is paramount to any right which the owner of the land has to reclaim his land from overflow.

There is no practical difference as to results, if the owner of the land should place his dam upon the navigable stream itself, and not upon its tributary. Neither do we see any difference in the legal aspect of the two cases. The mere fact that an owner has title absolute to the bed of the tributary, and not title absolute to the bed of the navigable stream, does not mark a substantial difference in the eyes of the law. A man may not create a public nuisance upon his own land. In the somewhat celebrated case of *People* v. *Gold Run Ditch and Mining Co.*, 66 Cal. 138,[1] it was held that the acts of defendant

[1] 56 Am. Rep. 80, and note.

in casting *débris* into a tributary of the Sacramento River, fifty miles or more distant from the river, constituted a public nuisance, as obstructing the free use of the Sacramento River as a navigable stream. It is the result—the effect—of the act of a party that determines its character as a nuisance. The particular point of location where the act is done is not material in determining the character of the act. Directly diverting waters in material quantities from a navigable stream may be enjoined as a public nuisance. Neither may the waters of a navigable stream be diverted in substantial quantities by drawing from its tributaries. If those tributaries form the source of the stream, no private ownership in their beds justifies a damming of them, to the result of an obstruction to navigation in the stream below. In this case the same principle is directly presented. If the dams upon these sloughs result in the obstruction of Salt River as a navigable stream, they constitute a public nuisance.

The fact that these sloughs carry tide-waters, which ebb and flow, presents no different case from one where the tributaries so dammed flowed fresh water. It is the result of the act which characterizes the nuisance, and the methods and instruments used, leading to that result, are immaterial. In other words, no man may use his o. property in a manner whereby that use creates a public nuisance.

While the state is pleased to see its swamp and overflowed lands reclaimed, and thereby become productive, yet the constitution of the state declares that no owner of tide-lands of any harbor, bay, inlet, estuary, or other navigable water in this state, shall be permitted to destroy or obstruct the free navigation of such water. (Const., art. XV, sec. 2.)

In view of what has been said, it is plainly apparent that an express finding of fact as to the effect of these dams, placed in the sloughs tributary to Salt River, upon the navigability of that river, is a material and vital question in the case, and for that reason a direct and specific finding should be made upon it.

For the foregoing reasons the order is reversed and the cause is remanded.

Van Dyke, J., Harrison J., McFarland, J., Temple, J., and Henshaw, J., concurred.