[S. F. No. 5441. In Bank.—October 1, 1912.]

EDWARD H. FORESTIER, Appellant, v. FRANK JOHNSON et al., Respondents.

NAVIGABLE WATERS—FLY'S BAY — FINDING — EVIDENCE.—The finding that the body of water commonly known as "Fly's Bay," the same being a portion of, and opening into and connected with the Napa River, is navigable water, is held supported by the evidence.

ID.—CONTROL OF NAVIGABLE WATERS—TIDE LANDS—LIMITATIONS ON STATE'S POWER OF DISPOSITION—TITLE SUBJECT TO PUBLIC TRUST. So far as may be necessary for the regulation of interstate and foreign commerce, the United States has the paramount right to control the navigable waters within the several states. The state can make no disposition of the soil beneath, or allow any interference with the navigable waters, that will impair this right and power of the United States. The title to the soil beneath such waters, including all that is covered with water at ordinary high tide, as well as that lying below low tide, belongs to the states by virtue of their sovereignty, and is held in trust for the people of the state, that they may enjoy the navigation of the waters, carry on commerce over them, and have the liberty of fishing thereon freed from the obstruction or interference of private parties. This trust devolving upon the state for the public, and which can only be discharged by the management and control of property in which the public has an interest, cannot be relinquished by a transfer of the property. The control of the state for the purposes of the trust can never be lost, except as to such parcels as are used in promoting the interests of the public therein, or can be disposed of without any substantial impairment of the public interest in the lands and waters remaining.

ID.—SALE OF TIDE LANDS SUBJECT TO PUBLIC EASEMENT IN NAVIGABLE WATERS.—Sections 3440 to 3493½ inclusive of the Political Code authorizing the sale of swamp lands, salt marsh, and tide lands, conceding that they authorize the sale of the soil covered by water at ordinary high tide, do not authorize a sale which destroys or vacates the dedication of the water to the public uses of navigation and fishery, or which vests in the grantee the right to prevent the public use and convert both land and water to his own private use and possession. Such sections only design to dispose of tide lands subject to the public easements in any navigable waters included within the tracts disposed of.

ID.—CONSTITUTIONAL LIMITATIONS ON POWER OF STATE TO SELL TIDE LANDS—CONSTRUCTION OF PATENT.—The provisions of section 2 of article XV of the constitution of 1879, that no person possessing tidal lands of a bay, estuary, or other navigable water, whether the possession be lawful or unlawful, can be permitted to obstruct the free navigation thereof, are mandatory and prohibitory, and operate as a limitation upon the power of the legislature in the matter of the disposition of tide lands, and are to be considered as incorporated in any grant or patent of such lands the same as if inserted therein, and to qualify it so that the estate granted is limited to the permitted uses. The result is that a grantee of such lands may claim the portions of the lands purchased which are not capable of navigation, but that he must leave the navigable waters open for public use.

ID.—CODE PROVISIONS SIMILAR TO PREVIOUS STATUTES—PRESUMPTION OF SIMILARITY OF PURPOSE AND MEANING.—It is to be presumed that the legislature intended the provisions of the Political Code respecting the disposition of tide lands, which did not substantially depart from the statutory provisions previously existing, to have substantially the same purpose, object, and meaning.

ID.—GRANT OF TIDE LAND—NONINCLUSION OF NAVIGABLE WATERS NOT DETERMINED.—The action of the surveyor-general in receiving the application, approving the survey and preparing the patent for tide lands, or of the governor in executing it, cannot be considered as a determination by the state that the land does not include any navigable water, or as a destruction or discontinuance of the public easement therein, or as an exercise of the functions of the state concerning the control of navigable waters.

ID.—GRANTEE OF TIDE LANDS CANNOT RECLAIM SO AS TO INTERFERE WITH NAVIGATION—EXISTENCE OF NAVIGABLE WATERS AN OPEN QUESTION OF FACT—DEFENDANT MAY SET UP RIGHTS OF NAVIGATION.—Conceding that the title to the soil passes when tide land is purchased from the state, under the code, the question whether it includes within its bounds any navigable waters, and the extent of such navigable waters, are not determined by the sale, but remain open for further adjustment between the purchaser and the state, and the sale does not vest in the purchaser the right to erect reclamation works which may materially interfere with the navigation of such waters. And the question whether or not there is such navigable water over such land must in the mean time remain open as a question of fact, and its existence may be shown by any citizen in defense of an action to prevent his exercise of the public right of navigation secured to him by section 2 of article XV of the constitution.

ID.—POWER OF STATE TO CONTROL NAVIGABLE WATERS—NONEXERCISE OF POWER BY UNITED STATES.—In the absence of the exercise by the United States of its power to control navigable waters and adjust harbor lines for the purpose of regulating interstate and foreign commerce, the state has control and management of such waters, and its mandates upon the subject are binding upon all persons.

ID.—ACTIONS BY GRANTEE OF TIDE LANDS—JUDGMENT UPHOLDING DEFENDANT'S RIGHT OF NAVIGATION—TITLE OF SOIL NOT IN ISSUE—IMMATERIAL FINDING—APPEAL.—In an action by a grantee of tide land to enjoin trespasses thereon, a judgment in favor of the defendants, merely securing to them the exercise of the public rights existing in navigable waters, based upon findings that the land in question is covered by navigable waters and that the defendants are citizens, is not an adjudication against the plaintiff's title to the soil of the property granted, notwithstanding such title was tech-

nically put in issue by the pleadings, and the court found thereon adversely to the plaintiff. Such issue and the finding thereon were immaterial, and the finding, although erroneous, is not binding on the plaintiff, and does not warrant a reversal of the judgment.

ID.—DEFENDANT MAY SET UP RIGHT TO NAVIGABLE WATERS—PRIVATE INJURY NOT ESSENTIAL.—A person against whom an action is begun to enjoin him from using navigable waters, or other public way, may defend by asserting his public right to do so. He need not, in such a case, show private injury either to person or property.

ID.—HUNTING WILD GAME AN INCIDENT TO RIGHT OF NAVIGATION.— The hunting of wild game, although not designated by the authorities as an object for the protection and promotion of which the state holds title to and dominion over the tide lands and navigable waters, nevertheless is a privilege which is incidental to the public right of navigation; and any persons, having the right of navigation over such waters, may exercise that right at will as a public right, and if, in doing so, they find game birds thereon, they may, during the lawful season, shoot and take them.

APPEAL from a judgment of the Superior Court of Napa County and from an order refusing a new trial. Henry C. Gesford, Judge.

The facts are stated in the opinion of the court.

Bell, Straus & Atwood, and Frank V. Bell, for Appellant.

Raymond Benjamin, and Frank L. Coombs, for Respondents.

SHAW, J.—Appeals taken from the judgment and from an order denying a new trial in an action to enjoin trespasses upon and injuries to land alleged to belong to the plaintiff.

The plaintiff claims ownership in fee of 302 acres of land which at ordinary high tide is covered with water and is known as "Fly's Bay." The defendants are residents and citizens of the state. They deny that the plaintiff is the owner of the land, but do not claim ownership in themselves. Their sole affirmative claim is that as citizens of the state they have the right to go upon the premises for the purposes of hunting, fishing, and navigation. They assert that Fly's Bay is a side channel of the Napa River and is a navigable stream or channel and as such belongs to the public, so far as may be necessary for the purposes stated. The

plaintiff claims title from the state of California, under a sale of the land as tide land made by the state to him on January 15, 1906. The action was begun on January 26, 1906. Afterward, on March 4, 1907, in pursuance of said sale, a patent was issued to him by the state.

The court below found that the plaintiff is not the owner or entitled to the possession of the premises; that they belong to the state of California; that the "so-called property . . . consists of a navigable bay commonly known as 'Fly's Bay,' which said bay is a portion of and opens into and at its northern and southern boundaries is connected with the Napa River . . . one of the navigable streams within the county of Napa;" and that at mean tide the whole of the premises is a large body of navigable water which for many years has been and now is used by vessels of small burden for purposes of navigation. Judgment was thereupon given that each defendant is entitled to the privileges, use, possession, and enjoyment of the waters of Fly's Bay for navigation, for fishing, and for hunting wild game thereon, and that plaintiff take nothing by his action.

The evidence concerning the survey under which the plaintiff obtained his patent, shows that the tracts surrounding Fly's Bay had been previously sold as tide lands, or as swamp lands, and that the surveys thereof had been made by meandering Fly's Bay and making its banks the boundaries of those tracts. In surveying for the plaintiff, the distances across the channel at the northern end of the bay and across the bay at the southern line of the tract, and across Mud Slough on the easterly line, were ascertained by triangulation. The southern end was more than a quarter of a mile wide. The remaining lines were not surveyed, but were ascertained by verifying the surveys of the surrounding tracts and practically adopting the lines thereof next to the bay as the lines of the plaintiff's tract. There is ample evidence to show that through this bay and extending at each end into Napa River, there is a channel deep enough for navigation at mean tide which has been used for many years and is now used for navigation by the public. There is evidence also that practically the whole area included within the boundaries of the patent is navigable for small boats at ordinary high tide. It does not appear that there has ever

been any occasion for running boats out of the main channels, except for the purpose of hunting. At low tide the land is nearly all bare, except the channel aforesaid. The finding that Fly's Bay is navigable water is supported by sufficient evidence.

The issuance of the patent is admitted. If it conveys to the plaintiff the unqualified fee in the entire area, the findings and judgment are unquestionably wrong. If it conveys the title to the soil, subject to the public easement for purposes of navigation and fishery, the finding that the plaintiff has no title at all is without support, but the judgment refusing an injunction and declaring the defendants entitled to the privileges of the bay for navigation and fishery, is not erroneous in any substantial respect. The latter proposition presents the principal question for consideration.

The defendants, in their presentation of the case to this court, admit that the patent was valid and effectual to convey to the plaintiff the title to the soil underlying the waters of the bay and to give him complete title to the premises, except so far as they may be necessary to the public uses of navigation and fishery. With the exercise of these public rights, they contend, the plaintiff cannot interfere. They further say that if a citizen has the right to navigate the water in a boat, he may go at will, for any purpose or without purpose, and that if he finds game birds thereon he may shoot them and take them for his own use without infringing any right of the plaintiff as the subordinate owner of the soil. The defendants further concede that they have no private rights in the premises, nor any such privity with the state as would be necessary to authorize them to attack the validity of the patent except so far as it is absolutely void as matter of law. The decision in *Gale* v. *Best*, 78 Cal. 235, [12 Am. St. Rep. 44, 20 Pac. 550], and other similiar cases, would preclude them from making such attack as mere citizens claiming public rights alone. Their theory is that they are not attacking the patent at all, but that it is qualified and limited by the law and by certain provisions of the statute and the constitution which enter into and become part of it, and that they are seeking only to have it limited to its true effect and to claim and maintain the privileges which, as thus qualified, it preserves to them.

So far as may be necessary for the regulation of interstate and foreign commerce, the United States has the paramount right to control the navigable waters within the several states. The state can make no disposition of the soil beneath, or allow any interference with the navigable waters, that will impair this right and power of 'the United States. The title to the soil beneath such waters including all that is covered with water at ordinary high tide, as well as that lying below low tide, belongs to the respective states by virtue of their sovereignty. "It is a title held in trust for the people of the state that they may enjoy the navigation of the waters, carry on commerce over them, and have the liberty of fishing therein freed from the obstruction or interference of private parties." . . . "The trust devolving upon the state for the public, and which can only be discharged by the management and control of property in which the public has an interest, cannot be relinquished by a transfer of the property. The control of the state for the purposes of the trust can never be lost, except as to such parcels as are used in promoting the interests of the public therein, or can be disposed of without any substantial impairment of the public interest in the lands and waters remaining." . . . "It is grants of parcels of lands under navigable waters, that may afford the foundation for wharves, piers, docks, and other structures in aid of commerce, and grants of parcels, which being occupied, do not substantially impair the public interest in the lands and waters remaining, that are chiefly considered and sustained in the adjudged cases as a valid exercise of legislative power consistently with the trust to the public upon which such lands are held by the state." (*Illinois C. Ry.* v. *Illinois,* 146 U. S. 435, 452, [36 L. Ed. 1018, 13 Sup. Ct. Rep. 110].) Similiar statements concerning this subject have been made by this court. (*Eldridge* v. *Cowell,* 4 Cal. 87; *Ward* v. *Mulford,* 32 Cal. 372; *Oakland W. F. Co.* v. *Oakland,* 118 Cal. 183, [50 Pac. 277]; *People* v. *Kerber,* 152 Cal. 733, [125 Am. St. Rep. 93, 93 Pac. 878].)

Since the defendants concede the validity of the patent and that the title to the soil passed thereby, and claim only the public rights aforesaid, and as the question of the validity and effect of such patents, as affecting the right of the state to vacate them or retake the lands, is involved in other cases

now pending before this court, we need not determine whether or not the sale passed the title to the soil to the plaintiff, but, for the purposes of the case, we will assume that it is valid and effectual to that extent.

The defendants further concede the soundness of the decision in *Eldridge* v. *Cowell,* 4 Cal. 87, to the effect that the state has power to establish a harbor line, or seawall, in furtherance of navigation, and to fix it at such a distance from the shore that some of the intervening lands lie so far from the seawall that they cannot be conveniently or practically applied to any use in aid of navigation or of commerce between land and water, and that, having done so, the public easement over such land is destroyed, and the state may then sell it to private persons to be filled in and applied to other purposes. This proposition has been affirmed, recognized, or conceded in other cases in addition to those above cited. (*Holladay* v. *Frisbie,* 15 Cal. 635; *San Francisco* v. *Straut,* 84 Cal. 124, [24 Pac. 814]; *Wheeler* v. *Miller,* 16 Cal. 124; *Knight* v. *Haight,* 51 Cal. 171; *Friedman* v. *Nelson,* 53 Cal. 589; *Seabury* v. *Archur,* 28 Cal. 142; *Knight* v. *Roche,* 56 Cal. 21; *Le Roy* v. *Dunkerly,* 54 Cal. 459; *People* v. *Davidson,* 30 Cal. 384; *People* v. *Klumpke,* 41 Cal. 277; *Hyman* v. *Read,* 13 Cal. 444. See, also, *United States* v. *Mission R. Co.,* 189 U. S. 405, [47 L. Ed. 865, 23 Sup. Ct. Rep. 606].)

The sale and patent, under which plaintiff claims title, possession, and control of these waters, were made in pursuance of the provisions of the Political Code authorizing the sale of swamp lands, salt marsh, and tide lands, being sections 3440 to 3493½, inclusive. It is admitted that those provisions were regularly pursued. The aforesaid propositions being conceded by the defendants, the soundness of which we need not consider, the only remaining inquiry necessary to the disposition of the case is whether or not the provisions of the Political Code, conceding that they authorize the sale of the soil covered by water at ordinary high tide, go farther and authorize a sale which destroys or vacates the dedication of the water to the public uses of navigation and fishery, or vests in the grantee the right to prevent the public use and convert both land and water to his own private use and possession. We are of the opinion, for reasons

now. to be given, that such sale does not vacate the public easement or vest such right in the purchaser.

The decisions above cited, so far as they hold that the state may, in the interest of navigation, destroy the public easement and divert to exclusive private ownership parts of the tide land or submerged land not necessary for navigation and capable of reclamation for other uses, were all cases involving dispositions of lands under statutes adjusting, or authorizing the adjustment of, harbor lines and providing for the sale of lands covered by navigable waters but too far landward of the seawall to be of any use in connection with navigation, statutes which plainly manifested an intent to deal with and terminate the public easement over such lands. They are not authority for the proposition advanced by plaintiff, unless we shall find that the statute under which he purchased manifest a like intent.

The aforesaid provisions of the Political Code do not express or indicate such intent with respect to navigable waters, but, when properly interpreted and applied, show a design to dispose of the tide lands subject to the public easement in any navigable waters included within the tracts so disposed of.

The provisions in question are the result of an evolution in legislation beginning in 1855. The act of 1855 [Stats. 1855, p. 189] provided only for the sale and reclamation of the swamp and overflowed lands granted to the state by the United States by the act of Congress of September 28, 1850. (U. S. Stats. [9 Stats. 519].) The state held these lands free from any public use. This act of 1855 was repealed by the act of 1858, [Stats. 1858, p. 198], which substantially re-enacted the provisions of the former act. Its title was "An act to provide for the sale and reclamation of the swamp and overflowed lands of this state." It was perceived, however, that in many places the swamp land was contiguous to tide lands, that they were similar in character and appearance, that it was often difficult or impossible to accurately locate the lines of separation, and, indeed, that such line might change temporarily in times of flood. In view of these conditions the statute provided that if, upon the survey of any land sold under the act, a survey which the purchaser was to have made, any portion should prove to be land be-

longing to the state by virtue of her sovereignty, the money
paid therefor should be paid into the general fund of the
state, instead of the swamp land fund. (Stats. 1858, p. 198.)
An amendment, not important here, was made in 1859.
(Stats. 1859, p. 340.) The act of May 13, 1861, provided
for the reclamation and segregation of the swamp and over-
flowed lands of the state, and for the sale thereof, after
segregation. The swamp and overflowed lands were to be
segregated from the "high lands," that is, from lands be-
longing to the United States, and maps were to be made
thereof. Section 27 provided that the act should also apply
to salt marsh and tide lands. (Stats. 1861, p. 355.) Unim-
portant amendments were passed in 1862 and 1863. (Stats.
1862, p. 197; Stats. 1863, p. 523.) A complete revisory act
concerning the sales of swamp lands, marsh lands, tide lands
and other lands of the state was enacted April 27, 1863.
(Stats. 1863, pp. 591-601.) In 1864 and 1866 some amend-
ments were enacted. All these statutes were expressly re-
pealed by the general statute of 1868. (Stats. 1867-8, p.
507.) It was substantially a revision of the previous laws
on the subject. It established a state land office to manage
the sale of all lands held by the state and the reclamation
thereof where necessary. So far as the question here under
consideration is concerned, it is not materially different from
the provisions of the Political Code on the same subjects.

Neither in the Political Code nor in any of the previous
statutes above mentioned, is there any provision for the pro-
tection or management of navigable waters, or for the regu-
lation of navigation. No provision is made for the consid-
eration of the subject of navigation or for a decision of the
question whether any tide lands are or are not required there-
for, or whether the public right of navigation over any given
parcel of the soil may be discontinued and the dedication of
the soil to the public use revoked or vacated without detri-
ment to the general welfare. The scheme is manifestly de-
signed, not as an exercise of the sovereign power of dominion
over these lands for the preservation and protection of the
right of navigation, or of the duty of the state to promote,
control, and regulate it, but as a plan to dispose of the soil of
the tide lands in such a manner that the grantee shall take it
for reclamation and cultivation subject to the public rights

wherever they may exist over such lands. It would follow, therefore, that sale under these laws authorizes no destruction of any public easement and that whenever a navigable channel or navigable water may extend over any tide land granted by the state under these statutes, the public right of navigation therein is not destroyed, the purchaser takes subject thereto, and he has no right to enjoin or prevent any citizen from exercising the public rights incident thereto.

If this was true of these statutes originally, because of the nature of the state's title to the land and its duty to protect and preserve navigation, there can be no doubt that it is true since the adoption of the constitution of 1879. Apparently for the purpose of settling this question, section 2 of article XV provides that no one "claiming or possessing the frontage or tidal lands of a harbor, bay, inlet, estuary, or other navigable water in this state, shall be permitted to exclude the right of way to such water whenever it is required for any public purpose, nor to destroy or obstruct the free navigation of such water; and the legislature shall enact such laws as will give the most liberal construction to this provision, so that access to the navigable waters of this state shall be always attainable for the people thereof." The legislature is without power to dispose of the tide lands of the state in a manner which would conflict with this provision of the constitution, or to provide for the alienation of a greater estate in such lands than that provision would permit. The provision is that no person possessing tidal lands of a bay, estuary, or other navigable water, whether the possession be lawful or unlawful, can be permitted to obstruct the free navigation thereof. The power of the legislature is limited by the provisions of the constitution, which are mandatory and prohibitory. Therefore, if it can dispose of, or authorize the disposition of, the underlying soil to private ownership, it cannot thereby authorize the alienee to obstruct the free navigation of such water. The words of the constitution are to be considered as incorporated in the grant or patent the same as if inserted therein. They become a part of it and qualify it so that the estate granted is limited to the permitted uses. All the statutory provisions aforesaid regarding tidal lands must be construed so as to be in harmony with this declaration. An intent to

contravene the constitution will not be imputed to the legislature unless it clearly appears and when it does appear the provision is void. We think it is plain that the provisions for the sale of swamp and overflowed, salt marsh, and tide lands as set forth in the Political Code were not intended to affect or extinguish the public rights in navigable waters. The result is that the grantee of such lands may claim the portions of the land so purchased which are not capable of navigation, but that he must leave the navigable waters open for public use.

The previous decisions of this court confirm these conclusions. *People* v. *Morrill*, 26 Cal. 336, was an action on behalf of the state to cancel a state patent to Morrill, for land sold to him under the act of May 14, 1861 (Stats. 1861, p. 363), providing that tide lands might be sold under the laws then in force for the sale of swamp and overflowed lands. The act of May 13, 1861, had not then become operative, and the court held that the laws referred to were the acts of 1858 and 1859. (Stats. 1858, p. 198; Stats. 1859, p. 340.) The land patented lay upon the sea beach and extended from the line of high tide seaward beyond the low tide line. It was unfit for cultivation and unsuitable for reclamation. The court declared that the acts of 1858 and 1859 were enacted to encourage the reclamation of lands suitable, when reclaimed, for cultivation, and were intended to apply only to lands susceptible of reclamation, and that they did not authorize the sale of land along the sea beach lying between the high and low tide lines. *Taylor* v. *Underhill*, 40 Cal. 471, is similar to the case at bar. The land in controversy there was a narrow strip opposite the city of Sacramento, constituting the sloping bank of the Sacramento River, lying between the high tide and the low tide lines. The defendant claimed the right to purchase it from the state under the act of 1868, aforesaid. He had obtained a certificate of purchase from the surveyor-general under that act. The court says: "It could not have been intended in authorizing the sale of swamp and overflowed lands to enable persons to obtain titles to lands under navigable waters, which are incapable of being reclaimed for agricultural purposes, and which could not be utilized without materially interfering with navigation." . . . "Admitting that the

title of the state would pass to the defendant under the patent, it would not authorize him to change the waterfront or obstruct navigation. The state can probably sell the land and authorize the purchaser to extend the waterfront so as to enable him to build upon this land; but it must be done in the interest of commerce, and that must first be determined by the legislature. No such right to obstruct navigation passes to the purchaser under the laws for the sale of swamp and overflowed land.'' *Kimball* v. *MacPherson,* 46 Cal. 103, was a land contest referred to the court by the surveyor-general. It arose under the act of 1868 aforesaid. Each party claimed the right to purchase the land as tide land. At low tide it was an exposed sand beach; at ordinary high tide it was covered with water. It was not susceptible of use for agricultural purposes, and was useful only for some purpose in aid of commerce and navigation. The court said: ''It was not the intention of the legislature to permit a sand beach on the shore of the ocean, between ordinary high and low water marks, to be converted into private proprietorship under the act of March 28, 1868.'' . . . ''The chief purpose of that act was to reduce into one harmonious system all previous provisions for the sale of overflowed, swamp and tide lands, and other lands belonging to the state, and to provide for the reclamation of the first-named classes.'' . . . ''Nothing short of a very explicit provision to that effect would justify us in holding that the legislature intended to permit the shore of the ocean, between high and low-water mark, to be converted into private ownership.'' The judgment was that neither claimant was entitled to purchase. *People* v. *Cowell,* 60 Cal. 400, was a direct action to cancel a certificate of purchase of tide land issued under the act of 1863, above mentioned (Stats. 1863, p. 591). The land was on the shore of Monterey Bay at Santa Cruz, partly below low tide line and the remainder below the ordinary high tide line. The trial court found that it could be reclaimed by dykes, but could be made useful for agriculture only by transporting soil for that purpose, and that the cost of reclamation would greatly exceed its value, when reclaimed, for any purpose of tillage and agriculture. It was argued by the claimant that the mere fact that it would be a bad speculation for such uses was

immaterial, that the only test was, "Is the land reclaimable?" The court held that although reclamation was physically possible, land of that character was not within the terms of the statute, but that said statute applied only to land reclaimable for agricultural purposes, that this was clearly not of that character, and that therefore it was not subject to sale thereunder.

In *People* v. *Russ*, 132 Cal. 102, [64 Pac. 111], the defendant had bought, under the provisions of the code, a tract bordering on Salt River, a navigable stream in which the water rose and fell with the tide. He had applied to buy the land as marsh and tide land, under said code provisions. Two small sloughs extended through the tract from Salt River to the ocean. These were not navigable, but the tides forced water from the ocean through them into Salt River. This increased the flow of the river to the ocean, and by that means Eel River bar, at the outlet of Salt River and Eel River, was kept sluiced out to a depth which made it navigable and thereby navigation from Salt River to the ocean was made possible. The defendant in reclaiming his land dammed these sloughs so as to prevent this tidal flow through them from the ocean to the river, the effect being that the volume of water in the river was not sufficient to sluice out the bar, and navigation in the river and over the bar was thereby obstructed. The court held that, although the sloughs were not themselves navigable, yet that the filing of them so as to affect injuriously the navigation of the river and bar was unlawful. It said that the right to reclaim the tide lands, under the provision of the code for the sale of such lands, is not superior to the public use of navigable streams. Speaking of the right of the owner to dam the sloughs, it said: "The Swamp and Overflowed Land Act does not purport to give the owner that right, even conceding such a power in the state, and the right of the public in the use of a stream as a public highway, is paramount to any right which the owner of the land has to reclaim his land from overflow." . . . "While the state is pleased to see its swamp and overflowed lands reclaimed, and thereby become productive, yet the constitution of the state declares that no owner of tide lands of any harbor, bay, inlet, estu-

ary or other navigable water in this state, shall be permitted to destroy or obstruct the free navigation of such water.''

All of the foregoing decisions, except the last, concern sales made under the laws enacted prior to the code. As the code does not substantially depart from the provisions previously existing, it is to be presumed that the legislature intended it to be understood as having substantially the same purpose, object, and meaning. Hence it cannot be said that the action of the surveyor-general in receiving the application approving the survey, and preparing the patent, or of the governor in executing it, are to be considered as a determination by the state that the land does not include any navigable water, or as a destruction or discontinuance of the public easement therein, or as an exercise of the functions of the state concerning the control of navigable waters. It seems necessarily to follow that, conceding that the title to the soil passes when tide land is purchased from the state, under the code, the question whether it includes within its bounds any navigable waters, and the extent of such navigable waters, are not determined by the sale, but remain open for further adjustment between the purchaser and the state, and the sale does not vest in the purchaser the right to erect reclamation works which may materially interfere with the navigation of such waters. And the question whether or not there is such navigable water over such land, must in the mean time remain open as a question of fact, and its existence may be shown by any citizen in defense of an action to prevent his exercise of the public right of navigation secured to him by the said constitutional provision.

The decision in *Bolsa Land Co.* v. *Burdick,* 151 Cal. 254, [12 L. R. A. (N. S.) 275, 90 Pac. 532], and the comments of the court regarding the power of the state to sell tide lands, are based on the conclusion stated in the opinion that the waters there involved were not navigable. While it appeared that some of the land there involved had been obtained from the state by purchase under the code provision for the sale of tide lands, yet it also appears that the land or waters so purchased were all included within the limits of a Mexican grant afterward confirmed by the United States. It is doubtful if the state patent conveyed

any title thereto. There is nothing in the decision which, when applied to the facts upon which it is based, is at all inconsistent with the proposition that the provisions of the Political Code for the sale of swamp lands and tide lands do not authorize the closing of navigable waters by the purchaser and were not intended to affect public easements therein. The effect of the constitutional provision was not mentioned or involved in that case.

It has been said that the right of the United States to control navigable waters and adjust harbor lines in the exercise of its power to regulate interstate and foreign commerce is paramount to any title, dominion, or control of the state over such water. (*Illinois C. Ry.* v. *Illinois,* 146 U. S. 435, [36 L. Ed. 1018, 13 Sup. Ct. Rep. 110].) Nothing which we have said is intended to apply to this question. It is clear that in the absence of any exercise of such power by the United States, the state has control and management thereof, and its mandates upon the subject are binding upon all persons.

The appellant claims that the title to the soil was transferred to him by the patent, and hence that if the finding that the title is in the state and not in him is an adjudication against him, it is a cloud upon his title of such force and effect as to constitute injurious error for which the judgment must be reversed. As we have shown, the validity of the patent is not involved in this case. The defendants cannot question it. Although it is technically put in issue by the pleadings, the issue is immaterial. The judgment contains nothing on the subject of title, and the finding on title is not necessary to support it. It secured to the defendants nothing but the exercise of the public rights existing in navigable waters. This judgment is supported by the finding that the bay is navigable, and that the defendants are citizens. The findings upon the immaterial issue, even if erroneous, are not binding upon the plaintiff and do not warrant a reversal of the judgment. (*Collins* v. *Gray,* 154 Cal. 135, [97 Pac. 142].)

A person against whom an action is begun to enjoin him from using navigable water, or other public way, may defend by asserting his public right to do so. He need not, in such a case, show private injury either to person or prop

erty. This is not inconsistent with the well-established rule that if such navigable water or public way is obstructed or closed, a private person cannot maintain an action to remove the obstruction or open the way, or to recover damages thereby caused, or to enjoin a threatened obstruction, unless he can show such private injury.

The authorities do not designate the hunting of wild game as an object for the protection and promotion of which the state holds title to and dominion over the tide lands and navigable waters. Nevertheless it is a privilege which is incidental to the public right of navigation. There is no private property right in wild game. The wild animal or bird, not in captivity nor tamed, becomes the property of him who takes or kills it. Any person has the right to take and kill such wild birds or other game in any place where he may find them. He has no lawful right to trespass on the premises of another for that purpose. But wherever he may lawfully go, he may take and kill such game as he may find there, subject, of course, to the restrictions of the game laws. The defendants, therefore, having the right of navigation over these waters, may exercise that right at will as a public right, and if, in doing so, they find game birds thereon, they may, during the lawful season, shoot and take them. The plaintiff, of course, has an equal right to the same privilege. If the judgment were to be construed as excluding the plaintiff from this privilege or as giving defendants the exclusive privilege of hunting thereon, it would be to that extent erroneous. But it is clear that it was not so intended and should not be given such effect. It is to be understood as a declaration that the defendants, in common with the plaintiff and all other persons, have the privilege of hunting on these waters while exercising the public right of navigation over them. It is, therefore, a correct statement of the rights of the defendants.

The judgment and order are affirmed.

Angellotti, J., Sloss, J., Melvin, J., and Lorigan, J., concurred.

Rehearing denied.