[No. 2,723.]

## FREDERICK F. LOW, GOVERNOR, HENRY W. CLEAVE-LAND, J. D. WHITNEY, WILLIAM ASHBURNER, J. W. RAYMOND, E. S. HOLDEN, ALEXANDER DEERING, GEORGE W. COULTER, AND GALEN W. CLARK, CONSTITUTING AND KNOWN IN LAW AS "THE COMMISSIONERS TO MANAGE THE YOSEMITE VALLEY AND THE MARIPOSA BIG TREE GROVE," *v.* J. M. HUTCHINGS.

YOSEMITE VALLEY—THE STATE AS TRUSTEES—POWER OF LEGISLATURE.— Congress having, in 1864, granted to the State of California the Yosemite Valley in trust for certain purposes, and with a proviso that it should remain inalienable forever, the State Legislature has no power to make an unconditional and absolute grant of it to a third person in violation of such trust.

PRE-EMPTION RIGHT DEFEASIBLE BY GOVERNMENT BEFORE MONEY PAID.—Though a qualified preëmptioner enter upon public land, with intention to preëmpt the same, and perform all the acts necessary to perfect his preëmption right, except the payment of the purchase price, the Government may, nevertheless, at any time before the price is actually paid or tendered, devote the land to another purpose, and thereby wholly defeat the right of preëmption.

HUTCHINGS AND LAMON SPECIAL ACT INOPERATIVE WITHOUT RATIFICATION BY CONGRESS—The Act of February 20th, 1868, granting certain

lands, held in trust by the State in Yosemite Valley, to Hutchings and Lamon, being in terms not to take effect until after its ratification by Congress, cannot, in the absence of such ratification, have any force, or serve as a muniment of title, or protect the contemplated grantees against an ejectment brought by the Commissioners appointed to manage the property.

APPEAL from the District Court of the Thirteenth Judicial District, Mariposa County. ·

The District Judge, after reciting the facts, concluded his findings in the following language: " That it would operate as great and irreparable injury to defendant to be ejected from the lands in controversy, before the final action of Congress upon the Act of Legislature last mentioned; and as conclusion of law the Court finds that the defendant is entitled to judgment. The case of *Hutton* v. *Frisbie*, in 37 Cal. 495, and others cited by the plaintiffs' attorney, I do not consider in point—and I further decide that when a preemptioner enters upon the unsurveyed public lands, under the sanction of a public law, and makes improvements and becomes a bona fide settler, he acquires such rights as the Government cannot divest or take from him."

There having been a judgment for defendant in accordance with the findings, the plaintiffs appealed.

The other facts are stated in the opinion.

*Alex. Deering*, for Appellants.

So far as the Act of the Legislature figures in this case, it may be disposed of by referring to its second section, which provides that it shall take effect "when ratified by Congress," and as Congress has not ratified it, it has no operation. But if it were in force, the Legislature had no more right to alienate any of the Yosemite Valley than any private individual; and its action was an unwarranted interference with matters that it had no right to attempt to control.

The only question involved in the case is, whether the defendant has acquired such rights, by merely settling on the land, as the Government could not ·divest? Were this question an open one counsel might claim the privilege of .a more lengthy discussion; but as this Court has in four cases decided it, and it has been explicitly passed upon and decided by the Supreme Court of the United States, those decisions will be cited, with full confidence that although overruled by the learned Judge in the Court below, they will be received as authority in this Court. (*Hutton* v. *Frisbie*, 37 Cal. 476; *Hastings* v. *McGoogen*, 27 Cal. 85; *Page* v. *Hobbs*, 27 Cal. 487; *Page* v. *Fowler*, 28 Cal. 609; *People* v. *Shearer*, 30 Cal. 550; *Frisbie* v. *Whitney*, 9 Wallace, 191.)

*L. F. Jones* and *J. B. Campbell*, for Respondent.

We submit that there is more than one question in this case, and that one of them is, not whether the Government could have divested· such rights as the defendant had acquired, but, rather, have· such rights as defendant had acquired been divested? The case here is quite different from that passed upon in *Hutton* v. *Frisbie* and *Frisbie* v. *Whitney*. Defendant settled under the general laws, and subsequently Congress passed the Act of June 30th, 1864, granting the Yosemite Valley, and including defendant's land, to the State. There are no words in the Act indicating any intent to affect any rights or privileges which had then already accrued to a preëmption settler; and there was nothing in "the condition of things which called for such legislation," from which such an intent could be inferred. Applying the reasoning in *Hutton* v. *Frisbie* to the effect of the Act of June 30th, 1864, the conclusion must be precisely the reverse of that reached in respect to the Act of March 3d, 1863, affecting the Suscol Ranch, which was involved in that case. The defendant has in his favor all "the equities which lie at the foundation of the preëmption policy" and

all the equities which this Court conceded to the defendant in *Hutton* v. *Frisbie*. In that case the plaintiff sought, through the general preëmption laws, but against their spirit, to deprive the defendant of lands bought in reliance upon the Vallejo title. In this the plaintiffs seek through a special Act of Congress to deprive the defendants of land settled up and improvements bought in reliance upon the general preemption laws.

The conditions annexed to the grant by Congress are conditions subsequent, repugnant to the nature of the estate to which they are annexed, and are therefore void. (1 Greenl. Cruise, Title 13, Secs. 2, 20, 22; 1 Washb. R. P., Chap. 14, Sec. 6; 4 Kent, 150.) The State, therefore, took the fee, discharged of the conditions, and Congress would have no effective ratifying power; so that the defendant derived title under the special Act of February 20th, 1868, and is lawfully in possession.

But, independently of the foregoing considerations, the Acts and proceedings of the Legislature equitably operate as an estoppel against the maintaining of this action by the State or by her agents, the plaintiffs, in her behalf. If the judgment of the Court below is right, it will be affirmed, though the reasons given should not be correct or full.


By the Court, Crockett, J.:

In the year 1864 the Congress of the United States, by special Act, granted to the State of California the Yosemite Valley and the grove of big trees in Mariposa County in trust for certain purposes, and with a proviso that they shall remain inalienable forever. The Act also requires the State to appoint a Board of Commissioners to manage the property in the execution of the trust, with power to make leases of portions of the land for a term or terms not exceeding ten years. In the year 1866 the Legislature

accepted the grant, and appointed the plaintiffs a Board of Commissioners to manage the property, under the provisions of the Act of Congress, and with power to sue and be sued in respect to said lands in their official capacity. This action is ejectment in the ordinary form, brought by the Commissioners to recover one hundred and sixty acres of land situated in the Yosemite Valley, and in the occupation of the defendant. It appears from the findings of fact that in 1864, about forty days prior to the passage of said Act of Congress, the defendant, who was a duly qualified preëmptioner, entered upon the premises in controversy with the bona fide intention to preëmpt the same under the preëmption laws of the United States; that he purchased a dwelling-house and other improvements then on the premises, and has ever since resided upon and occupied said premises with his family; that he was, and at all times since his entry has been ready and willing to prove up his preëmption claim and to pay the purchase price therefor, but was hindered from doing so because the land had not been surveyed and sectionized, and was, therefore, not open to entry; that, with the intention to preëmpt the land as soon as an opportunity to do so was afforded, he had continued to make permanent and valuable improvements thereon.

If these were all the facts, there could be no possible doubt of the plaintiff's right to recover, under the principles announced in *Whitney* v. *Frisbie*, 9 Wallace, U. S. R. 191; *Hutton* v. *Frisbie*, 37 Cal. 475; reaffirmed in *Marquez* v. *Frisbie*, decided at the present term. These cases decide, after elaborate argument, and it may now be considered as finally settled, that if a qualified preëmptioner enter upon a portion of the public domain, with the intention to preëmpt the same, and performs all the acts necessary to perfect his preëmption right, except the payment of the purchase price, the Government may, nevertheless, at any time before the price is actually paid or tendered, devote the land to another

purpose, and thereby wholly defeat the right of preëmption. It is unnecessary to repeat here the process of reasoning by which the Courts have arrived at this result. It will be found to be elaborately stated in the cases referred to; and, whether deemed to be satisfactory or otherwise, must be accepted as settling the law on that point.

But it is claimed that the defendant's case does not come within the principle of these decisions, because in February, 1868, the Legislature of this State passed an Act which on that day became a law, whereby the State granted to the defendant the premises in controversy. If the grant had been wholly unconditional and absolute in terms, and had taken effect *in presenti*, it would have been clearly void for want of power in the Legislature to make it. It would have been in open and flagrant violation of the trust on which these lands were conveyed to the State, and, therefore, void. But the Legislature was evidently aware that it had no power to make the grant without the sanction of the United States, nor did it attempt to make it, except with the approval of Congress; for the second section of the Act provides that "this Act shall take effect and be in force from and after its ratification by the Congress of the United States." Congress, however, has not as yet ratified it, and, consequently, the Act has not yet taken effect, and is not as yet in force. As a muniment of title, it is and will continue to be wholly inoperative until ratified by Congress. Nor can the memorial of the Legislature, requesting Congress to ratify the grant to the defendant, improve his status in the Courts. Whatever consideration these proceedings may be entitled to at the hands of the Commissioners, as an argument why they should forbear, for the present, to press their demand for the possession, it is clear that they establish no equities in the defendant of which the Courts can take cognizance. The Legislature has not, either expressly or by implication, abridged or modified the powers of the Com-

missioners; and so long as these remain unimpaired, and the trust remains in force under which the State holds these lands, the right of the plaintiffs to their possession cannot be successfully resisted. From the facts found by the Court the defendant's case appears to be one of peculiar hardship, entitling him to relief in some form; but, however great the hardship upon the defendant, his only remedy is an appeal to Congress for relief in some appropriate form. The Courts can afford him none as the case now stands.

Judgment reversed, with an order to the Court below to enter judgment for the plaintiffs on the findings.