[L. A. No. 1983.  Department One.—January 24, 1908.]

# THE PEOPLE ex rel. STATE BOARD OF HARBOR COMMISSIONERS, Respondent, v. H. KERBER, JOHN ENGLEBRETSON, and O. NELSON, Appellants.

TIDE-LANDS—SOVEREIGNTY OF STATE.—Lands lying between the lines of the ordinary high and low tides, which are covered and uncovered successively by the ebb and flow thereof, are tide-lands within the usual meaning of that term, and belong to the state by virtue of its sovereignty.

ID.—WATER FRONT OF NAVIGABLE BAY—PUBLIC USE—PRIVATE PERSONS PRECLUDED FROM PRESCRIPTIVE RIGHT.—When tide-lands are situated in a navigable bay, and constitute part of the water front thereof, they constitute property devoted to a public use, of which private persons cannot obtain title by prescription, founded on adverse occupancy, for the period of the statute of limitations, not consistent with its public use.

ID.—LANDS DEVOTED TO PUBLIC USE—ABANDONMENT OF PUBLIC USE—PROPRIETARY PROPERTY—ADVERSE POSSESSION.—Lands, in general, which are devoted to public use, while so devoted cannot be acquired by adverse possession. But in cases where the public use is abandoned by competent authority the land is then held as proprietary property, and may cease to be protected by the general rule. If an adverse possession can be maintained, or if the statute of limitations can run against the state in regard to such proprietary property, it will begin to run from the date when the public use ceases, and not before.

ID.—POWER OF LEGISLATURE OVER PROPRIETARY PROPERTY—EFFECT OF POWER TO ABANDON PUBLIC USE.—If the power to dispose of proprietary lands is left to the legislature, it may then dispose of them in order that they may become the subject of private ownership. But the mere existence of a power to abandon a public use does not warrant the beginning of adverse possession before such power is exercised.

ID.—CONSTITUTIONAL LIMITATION AS TO TIDE-LANDS. — The provision in section 3 of article XV of the State Constitution, that "all tide-lands within two miles of any incorporated city or town in this state, and fronting on the waters of any harbor, estuary, bay, or inlet, . . . shall be withheld from grant or sale to private persons, partnerships, or corporations," forbids the legislature from disposing of them in any manner, except in furtherance of the purposes of navigation to which it is dedicated.

ID.—EFFECT OF CONSTITUTION UPON STATUTE OF LIMITATIONS.—In so far as the statute of limitations applies to such lands, the constitutional provision is of higher force, and the statute ceases to exist in rela-

tion thereto, and the state cannot devote such property to private use, either directly or by neglect of its officers and agents in permitting an occupation thereof for the period of ten years, under claim of ownership.

ID.—ESTABLISHMENT OF LINE FOR SEAWALL.—Whatever effect the construction of a seawall may have upon a use of land within its limits for private purposes, not detrimental to the public use or right, the mere establishment of a line for such seawall by the city in the water front of which appellants claim private ownership, cannot protect them against an action by the state.

ID.—ALCALDE GRANT INEFFECTIVE—TITLE OF UNITED STATES.—An alcalde grant on March 18, 1850, by the alcalde of the pueblo of San Diego, under which the appellants claim title, could not have been of any force to pass the title which had then accrued to the United States as sovereign, and was subsequently transmitted by it to the state.

ID.—ALCALDE GRANT NOT RATIFIED.—Held, that there is no legislative ratification of any previous alcalde grants of tide-lands in or adjacent to San Diego.

APPEAL from a judgment of the Superior Court of the City of San Diego. E. S. Torrance, Judge.

The facts are stated in the opinion of the court.

Stearns & Sweet, and Haines & Haines, for Appellants.

Victor E. Shaw, for Respondent.

SHAW, J.—This action is prosecuted under the authority of section 2578 of the Political Code, to recover possession of certain premises alleged to constitute a part of the tide-lands of the bay of San Diego. Plaintiff had judgment for part of the land sued for and the defendants appeal from that part of the judgment.

The defendants denied ownership of the lands by the state and pleaded, as a defense, the ten-year statute of limitations, as set forth in section 315 of the Code of Civil Procedure. The court found that the defendants have been in adverse occupancy of the land for more than ten years next before the action was begun. The evidence shows that their occupancy began on January 1, 1887, and has continued ever since that time. The claim of the defendants is that the action is barred by the statute and that, under the provisions

of section 1007 of the Civil Code, they have acquired title to the land by prescription.

The land in question lies between the lines of the ordinary high and low tides and is covered and uncovered successively by the ebb and flow thereof. It is, unquestionably, tide-land, in the usual meaning of that term. (*People* v. *Davidson,* 30 Cal. 386; *Rondell* v. *Fay,* 32 Cal. 364; *Oakland* v. *Oakland Water F. Co.,* 118 Cal. 182, [50 Pac. 277].) It is situated next to the shore line at ordinary high tide and constitutes a strip of land forty feet in width, running from the line of Atlantic Street on the west to the line of California Street on the east, assuming that those streets extend into the bay. The said shore line at that point is ten feet south of the south line of ''H'' street in the city of San Diego. The land extends forty feet into the water at ordinary high tide and, under the existing natural conditions, it is not disputed that it fronts on the waters of San Diego Bay and constitutes a portion of the waters thereof used for navigation. It either adjoins or is within the city of San Diego.

Tide-lands of this character vest in and belong to the state by virtue of its sovereignty. (*Shively* v. *Bowlby,* 152 U. S. 1, [14 Sup. Ct. 548]; *Farish* v. *Coon,* 40 Cal. 57; *People* v. *Morrill,* 26 Cal. 337; *Ward* v. *Mulford,* 32 Cal. 365.) And when such tide-lands are situated in a navigable bay and constitute a part of the water front thereof, as is the case here, they constitute property devoted to public use, of which private persons cannot obtain title by prescription, founded upon adverse occupancy for the period prescribed by the statute of limitations. In *Ward* v. *Mulford,* 32 Cal., on page 372, the court says on this subject: ''Such land is held in trust for the benefit of the people. The right of the state is subservient to the public rights of navigation and fishery, and theoretically, at least, the state can make no disposition of them prejudicial to the right of the public to use them for the purposes of navigation and fishery, and whatever disposition she does make of them, her grantee takes them upon the same terms upon which she holds them, and of course subject to the public rights above mentioned.'' (See, also, *Oakland v. Oakland W. F. Co.,* 118 Cal. 182, [50 Pac. 277], page 184, where the same passage is quoted with approval.) Property thus held by the state in trust for public use cannot be

gained by adverse possession, and the statute of limitations does not apply to an action by the state or its agents to recover such property from one using it for private purposes not consistent with the public use. This is the settled rule in this state with respect to all properties so devoted to public use, and tide-lands, underlying waters forming part of the waters of a navigable bay used for navigation, are not, in this respect, to be distinguished from property used for other public purposes. Upon this point the rule is thus stated: "It is immaterial where the title—that is, the record title— is held, whether by the state at large, or by a county, or by some municipal department or other official body. There can be no adverse holding of such land which will deprive the public of the right thereto, or give title to the adverse claimant, or create a title by virtue of the statute of limitations. The rule is universal in its application to all property set apart or reserved for public use, and the public use for which it is appropriated is immaterial. The same principles which govern the adverse holding of a street, a public square, a quay, a wharf, a common, apply to the adverse holding of a schoolhouse. The public is not to lose its rights through the negligence of its agents, nor because it has not chosen to resist an encroachment by one of its own number, whose duty it was, as much as that of every other citizen, to protect the state in its rights." This rule has been often repeated in the opinions of this court. (*Hoadley* v. *San Francisco,* 50 Cal. 275; *People* v. *Pope,* 53 Cal. 437; *Visalia* v. *Jacobs,* 65 Cal. 434, [52 Am. Rep. 303, 4 Pac. 433] ; *San Leandro* v. *Le Breton,* 72 Cal. 170, [13 Pac. 405] ; *Yolo Co.* v. *Barney,* 79 Cal. 378, [12. Am. St. Rep. 152, 21 Pac. 833] ; *Mills* v. *Los Angeles,* 90 Cal. 522, [27 Pac. 345] ; *Orena* v. *Santa Barbara,* 91 Cal. 621, [28 Pac. 268] ; *San Francisco* v. *Bradbury,* 92 Cal. 418, [28 Pac. 803] ; *Archer* v. *Salinas,* 93 Cal. 43, [28 Pac. 839] ; *Ames* v. *San Diego,* 101 Cal. 394, [35 Pac. 1005] ; *Home* v. *San Francisco,* 119 Cal. 537, [51 Pac. 950] ; *Holliday* v. *San Francisco,* 124 Cal. 358, [57 Pac. 146] ; *San Francisco* v. *Sharp,* 125 Cal. 536, [58 Pac. 173] ; *Southern Pacific Co.* v. *Hyatt,* 132 Cal. 240, [64 Pac. 272].)

It is true that the public use may, by some lawful act of public authority, be discontinued or abandoned and that, in that event, the property may thereupon cease to be protected

by this rule. If the title is at that time held by the state, it will thereafter hold it as a proprietor and not as a public agent or sovereign in charge of a public use. If an adverse possession can be maintained, or if the statute of limitations can run against the state, in regard to such proprietary property, it will begin from the date when the public use ceased and not before. If the power is left to the legislature, it may then provide for the sale of such property in order that it may become the subject of private ownership. But, as was said in *Yolo County* v. *Barney,* 79 Cal. 378, [12 Am. St. Rep. 152, 21 Pac. 833], the fact that the public authorities in charge of the property have power to discontinue or abandon the public use and sell the property for private use, does not affect the rule above cited, nor enable an occupant to gain it by adverse possession before that event occurs, or to invoke the statute of limitations to protect his possession against the state.

This was the rule applicable to such property, so held and used, before the adoption of the constitution of 1879. To make such tide-lands more secure against unwise disposition by the legislature to the detriment or destruction of the public rights, the following provision was inserted therein: "All tide-lands within two miles of any incorporated city or town in this state, and fronting on the waters of any harbor, estuary, bay, or inlet, used for the purposes of navigation, shall be withheld from grant or sale to private persons, partnerships, or corporations." (Art. XV, sec. 3.) Other constitutional provisions prevent the gift of any state property by the legislature. (Art. IV, sec. 31.) So long, therefore, as property of this character remains subject to use for the purposes of navigation, it cannot without an amendment of the constitution be disposed of by the state in any manner, except in furtherance of the purposes of navigation to which it is dedicated. The provisions of the constitution are of higher force than the statute of limitations, or the statute defining the manner of acquiring title to property by adverse occupancy. If the state is without power to dispose of this land for private use at all, its officers and agents must be without power to make a virtual disposition of it by their neglect in permitting private persons to occupy it for a period of ten years, under claim of ownership, and thus giving such persons an opportunity to invoke for their benefit a legislative declaration

that such occupancy will bar the state of its title. So far as
the statutes referred to may have had that effect before the
adoption of the constitution, they must be considered as having
ceased to exist when the constitution took effect. The con-
stitution declares that all laws inconsistent with its provisions
shall cease upon its adoption. (Art. XXII, sec. 1.) In this
view of the case, it is immaterial whether title by prescription
under the code is, or is not, founded upon the presumption
that the possession was originally taken under a grant which
had been lost in the lapse of time, as was the case at common
law, even if it were conceded that the rule that there can
be no adverse possession of property devoted to public use
did not apply to this land.

It is claimed that the land in controversy is not now devoted
to public use for navigation; that, by lawful action of the
harbor board, the public use has been discontinued and aban-
doned and the land made available for sale to private use,
and thus has become proprietary in character; that this oc-
curred more than ten years before the action was begun, and
hence, that the statute of limitations has barred the action
and the defendants have acquired title. This theory is based
on the fact that on March 17, 1890, the board of harbor com-
missioners of San Diego, under the provisions of sections
2587 and 2588 of the Political Code, established a line for
the location of a seawall or a harbor embankment to be there-
after erected, and that this land is between that line and the
shore, and some one hundred and fifty feet distant from the
seawall line. It may be admitted that when a seawall shall
be constructed on this line and the water between it and the
shore is thereby excluded from use for navigation, the land
between the wall and ordinary high-tide line, not abutting
on the wall, nor lying so near it as to be reasonably necessary
for purposes incidental to and in furtherance of navigation,
may become proprietary lands, which, like ordinary public
land, may be sold by the state to private persons for private
use not connected with navigation. Perhaps before such wall
is constructed, land within the seawall line and so remote
therefrom that its use for private purposes would not be det-
rimental to the public use or the public right, might be
disposed of to private persons in connection with and in aid
of the building of such wall and its adaptation to purposes

of navigation and commerce, as, for instance, to raise funds wherewith to build the wall. We are not called upon here to express any opinion on these questions. No such case is presented. No such disposition of the land has been made to the defendants, or to any person. No seawall has been built or projected; no barrier or obstruction to navigation has been placed on the line. For all practical purposes the bay is open to navigation to the actual shore line of high tide over the land in question as fully and freely as before the line was so located. It still remains, in fact, a part of the bay of San Diego which, by section 2579 of the Political Code, is placed in the possession and control of the harbor commissioners, with all the rights, privileges, easements, and appurtenances connected therewith. They may, at any time, change the location of the line. (Pol. Code, secs. 2579, 2588, 2593.) Before a seawall is constructed and before private rights accrue from such construction it would seem that their power to make such change is unlimited. It may therefore be changed so as to include this land within the waters of the bay set apart exclusively to navigation. In *People* v. *Williams*, 64 Cal. 499, [2 Pac. 393], the court says: "The mere establishment of a harbor line does not deprive the state of the right to control and regulate the water within the line." We think the establishment of the seawall line has no effect whatever upon the character of the waters and tide-lands between it and the shore as property devoted to use for navigation, at least, until some further action is taken looking to the erection of the wall, or the abandonment of the public use of the waters between it and the shore.

On March 18, 1850, the alcalde of the pueblo of San Diego, in consideration of the building of a wharf by the grantees, executed a deed purporting to convey to Jose Aguirre and others fifteen acres of land, including the land in controversy. The defendants claim under this deed and deraign title therefrom by a regular chain of conveyances. The wharf was built, but is gone. Defendants do not claim that they ever maintained any wharf. San Diego was incorporated on March 27, 1850, nine days after the execution of this deed. (Stats. 1850, p. 121.) This conveyance could not have been of any force or effect to pass the title. At that time the title had accrued to the United States as sovereign. The community which after-

CLII Cal.—47

ward became the city of San Diego was then a mere unincorporated village, or at most, a Mexican pueblo, exercising some powers in that capacity. Whatever powers it may have possessed over this land as a Mexican pueblo before the cession of the territory to the United States, those powers ceased when the cession took place, and the sole power and authority to dispose of such lands was thereupon transferred to the United States and was by it transmitted to the state of California at the time of its admission as a state on September 9, 1850. There is nothing in the incorporating act creating the city of San Diego that purports to validate the previous grants of tide-lands made by the alcalde. The act of May 14, 1861, refers only to marsh and tide-lands within five miles of the city of Oakland and San Francisco, or within one and a half miles of San Quentin prison. The proviso in that act declares that no sales of such land within those limits shall be confirmed by the act, "excepting alcalde grants which are hereby ratified and confirmed." (Stats. 1861, p. 363.) Statutes which operate to deprive the state of its property are to be construed favorably to the state, or, at all events, are not to be construed strictly against it. Under any theory of interpretation applicable thereto, this statute should not be deemed a ratification of previous alcalde grants of tide-lands in or adjacent to San Diego.

We have said nothing so far upon the question whether or not the provisions of section 315 of the Code of Civil Procedure do, in fact, apply to actions by the state for the recovery of possession of these tide-lands, aside from their exemption under the constitution, or as lands devoted to public use. For the purposes of the discussion we have assumed that they would apply but for such exemption, and that their effect was similar to that of section 318 respecting private property, except as to the length of the period of limitations. The language of the two sections, however, is materially different. Section 318 declares the action barred, unless the plaintiff, or his privies, were "seized or possessed of the property in question within five years before the commencement of the action." Section 315 is as follows: "The people of this state will not sue any person for or in respect to any real property, or the issues or profits thereof, by reason of the right or title of the people to the same, unless:

"1. Such right or title shall have accrued within ten years before any action or other proceeding for the same is commenced; or,

"2. The people, or those from whom they claim, shall have received the rents and profits of such real property, or of some part thereof, within the space of ten years."

The title of the state to lands lying between high and low tide accrued upon the admission of the state to the union. If all actions to recover such lands are barred under subdivision 1 of section 315, if begun more than ten years after the title of the state accrued, it would follow that the state could not, at this time, maintain any action for possession thereof against a trespasser, in any case, regardless of the time the unlawful possession had continued. In view of this absurd result it may be doubted if section 315 is applicable at all to actions to recover possession of such tide-lands. A doubt on this subject is expressed in *Farish* v. *Coon*, 40 Cal. 57, but the point was not decided. It is not necessary to decide it here. We have noticed it to this extent, merely to explain that we do not decide that the statute was intended to apply in any case.

The judgment is affirmed.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.