[S. F. No. 5252. In Bank.—November 21, 1910.]

JAMES E. MESSENGER, Respondent, v. W. S. KINGS-BURY, Surveyor-General of the State of California, Appellant.

STATE LANDS—POWER OF STATE TO SELL TIDE-LANDS.—The state may, if it sees fit, grant in private ownership such tide-lands as are capable of reclamation without detriment to the public right of navigation or fishing.

ID.—SECTION 3443A OF POLITICAL CODE FORBIDS SALE OF TIDE-LANDS.—Since the enactment of section 3443a of the Political Code on March 25, 1909 (Stats. 1909, p. 774), further sales by the state of tide-lands forming the shore or bed of navigable waters is forbidden. If such lands had theretofore been offered for sale, the legislature, in passing section 3443a, manifested its intent to withdraw them from further sale under sections 3440 and 3443 of that code.

ID.—STATE MAY WITHDRAW LANDS FROM SALE.—The disposition of the public lands is a matter resting entirely within the control of the legislature, which has the right to withdraw or reserve from further sale any part of the public domain.

ID.—VALID CONTRACT OF SALE—VESTED RIGHT OF PURCHASE—LAND WITHDRAWN BEFORE RIGHT OF PURCHASE VESTS.—Where a valid contract of sale has been entered into pursuant to law between the state and a purchaser, so that an equitable interest in the land is vested in the latter, the state cannot destroy the right so vested. But where there is no contract, and no vested right in the intending purchaser, the withdrawal of the land from sale, by repeal of the statute authorizing sales or otherwise, absolutely terminates the

power of the officers of the government to take the steps necessary to transfer title.

ID.—FILING AFFIDAVIT AND APPLICATION—NON-PAYMENT OF PURCHASE PRICE.—An applicant for the purchase of tide-land, under sections 3440 and 3443 of the Political Code, who had merely filed his affidavit and application to purchase, without paying any part of the purchase price, acquired no such vested right as would prevent a termination of the opportunity to purchase upon the repeal of the law providing for sale.

ID.—REPEAL OF LAW AUTHORIZING SALE—MANDAMUS TO COMPEL RE-CEIPT OF APPLICATION.—An applicant for the purchase of such land, who had merely filed his affidavit and application to purchase, without paying any part of the purchase price, and who, prior to the enactment of section 3443a of the Political Code, had commenced proceedings in *mandamus* to compel the surveyor-general to receive and file his application, will not, after the taking effect of that section, be awarded any relief in the *mandamus* proceeding.

APPEAL from a judgment of the Superior Court of Contra Costa County, and from an order refusing a new trial. Wm. S. Wells, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, Malcolm C. Glenn, Deputy Attorney-General, and R. C. Van Fleet, for Appellant.

A. E. Bolton, for Respondent.

Smith, Miller & Phelps, *Amici Curiæ*, for Respondent.

SLOSS, J.—This is a proceeding originally brought in the superior court for a writ of mandate to compel the defendant, as surveyor-general, to receive and file an application of plaintiff made under section 3443 of the Political Code to purchase from the state a piece of land, a portion of which is swamp and overflowed land, and a portion is tide-land bordering on the waters of Suisun Bay.

Plaintiff recovered judgment in the trial court and this judgment and an order denying defendant's motion for a new trial, were, on the twenty-third day of February, 1909, affirmed by the district court of appeal for the first appellate district. On the application of the appellant the proceeding was transferred to this court for hearing and determination.

As stated by the learned justice who wrote the opinion in the district court of appeal: "It clearly appears from the complaint and the findings that a portion of the land sought to be purchased is a strip of land lying along the margin of Suisun Bay, between the line of ordinary low tide and the line of ordinary high tide, and does not extend into or through the swamp and overflowed lands adjoining. It is alleged in the complaint, however, that all of the land sought to be purchased is capable of being reclaimed for agricultural purposes, and can be reclaimed without any interference with navigation, or any fishing or fisheries on Suisun Bay or elsewhere, and the court so found." Upon these facts, there were presented for decision the questions: 1. Whether the state has power to transfer its tide-lands, constituting the shores of navigable waters, into private ownership, except in aid of navigation, commerce, or fisheries; and, 2. Whether, granted that it has such power, it has, upon a proper construction of its legislation, in fact offered such lands for sale. Both questions are answered by the appellate court in the affirmative.

That the state may, if it sees fit so to do, grant in private ownership such tide-lands as are capable of reclamation without detriment to the public right is a proposition that seems well supported by the authorities cited by the respondent. It will be sufficient for the present purpose to refer to *Shively* v. *Bowlby*, 152 U. S. 1, [14 Sup. Ct. 548]; *Ward* v. *Mulford*, 32 Cal. 365, and *Oakland* v. *Oakland Water Front Co.*, 118 Cal. 160, [50 Pac. 277].

The other question, i. e., whether or not the state had, at the time of the proceedings under consideration, made provision by law for exercising this power, presents a more difficult problem. As the case stood when it was under consideration by the court of appeal, the determination of this question of statutory construction was necessary to a decision. But, as we shall presently point out, the law has now been changed so as to deprive the plaintiff of his right to relief under any view that may be taken of the meaning and effect of the statutes as they read at the time these proceedings were instituted.

The claim of the plaintiff is based upon sections 3440 and 3443 of the Political Code. Section 3440 provides that "the swamp and overflowed, salt-marsh, and tide-lands belonging to the state must be sold at the rate of one dollar ($1.00) per

acre, in gold coin, payable, twenty per cent of the principal within fifty days from the date of the approval of the survey by the surveyor-general; and the balance, bearing interest at the rate of seven per cent per annum, payable in advance, is due and payable one year after the passage of any act of the legislature requiring such payment, or before, if desired by the purchasers. . . ." Section 3443 provides that "any person desiring to purchase swamp and overflowed, or tide-lands, above low tide, must make . . . and file . . . in the office of the surveyor-general of the state" an affidavit stating certain matters. The section provides for the determination, by action in the superior court, of any contest filed in the office of the surveyor-general.

Plaintiff herein had, at the time of instituting this proceeding, advanced to the point of offering for filing his affidavit and application to purchase, and no further. He has not, to the present time, gone beyond this point. His survey has not been approved, and he has not paid the first installment of twenty per cent, or any part of the purchase price. While matters were in this condition, the legislature by an act approved and effective March 25, 1909 (Stats. 1909, p. 774), enacted section 3443a of the Political Code reading as follows: "The words 'tide-lands' mentioned and described in sections thirty-four hundred and forty and thirty-four hundred and forty-three of this code shall not be held or construed to apply to or to include the shore, or any part thereof, or the bed, or any part thereof, of the ocean or of any navigable channel or stream or bay or inlet within the state, between ordinary high and low water mark, and all such land over which the ordinary tide ebbs and flows is hereby withheld from sale. Nothing in this section shall be construed as a recognition that prior to the passage hereof, the tide-lands by this section withheld from sale have been offered for sale by the state."

Now, whatever may have been the effect of sections 3440 and 3443, standing alone, with respect to the purchase of tide-lands forming the shore or bed of navigable waters, there can be no question that by the enactment of section 3443a further sales of such lands were forbidden. If lands of this character had theretofore been offered for sale, the legislature, in passing the new section, manifested, by language too plain to be mis-

understood, its intent to withdraw them from further sale under sections 3440 and 3443. The disposition of the public lands is a matter resting entirely within the control of the legislature and that body has the undoubted right to withdraw or reserve from further sale any part of the public domain. (36 Am. & Eng. Ency. of Law, 2d ed., 225; *Day Land etc. Co.* v. *State*, 68 Tex. 526, [4 S. W. 865].) Where a valid contract of sale has been entered into pursuant to law between the state and a purchaser so that an equitable interest in the land is vested in the latter, the state will, of course, be prevented by force of familiar constitutional provisions from destroying the right so vested, (*Pennoyer* v. *McConnaughy*, 140 U. S. 1, [11 Sup. Ct. 699].) But where there is no contract, and no vested right in the intending purchaser, the withdrawal of the land from sale, by repeal of the statute authorizing sales or otherwise, absolutely terminates the power of the officers of the government to take the steps necessary to transfer title. (*Frisbie* v. *Whitney*, 9 Wall. 187.)

The decisions of this court are clear to the effect that an applicant who has merely filed his affidavit and application to purchase, without paying any part of the purchase price, under statutes essentially similar to the scheme provided by the Political Code for the disposition of public lands, has no such vested right as will prevent a termination of the opportunity to purchase upon a repeal of the law providing for sale.

In *Eckart* v. *Campbell*, 39 Cal. 256, the court had under consideration the act of March 28, 1868 (Stats, 1867-68, p. 507), an act which provided for the disposition of public lands in the same manner as that declared by the Political Code. Indeed, that act formed the basis of the provisions subsequently incorporated in the Political Code. Upon a consideration of the entire statute the court came to the conclusion that one whose application filed in due form had been accepted by the surveyor-general and who had received a certificate of location as provided for in section 12 of the act received "the exclusive privilege to become the purchaser of the particular premises described at any time within the fifty days from its (the certificate's) date. It is, however, a mere privilege which he might, at his option, accept or decline within that time—and his failure to pay the twenty per cent as required, is conclusive evidence to the land-officers that he has abandoned the

privilege thus conferred upon him." Referring to section 4 of the act, identical in terms with section 3514 of the Political Code, the court says: "The holder of such a certificate as that held by Eckart (i. e., the certificate of location merely) is, under this section distinctly characterized as an *applicant* merely, and it is the payment of the twenty per cent which converts him into a *purchaser,* and entitles him to receive from the register a certificate, which sets forth the terms of the contract, now for the first time made between the applicant and the state, the description of the land purchased, the sum already paid, and the amount to be paid hereafter, etc." And finally, as summarizing its views on the proper construction of the law, the court says that: "It does not seem to have been the intention of the statute, that the state should be considered as having parted with any interest in the land, until she had received the payment of at least the first installment of the purchase money." Upon this reasoning it was held that the surveyor-general had the right to entertain a second application to purchase where the first applicant had failed to make payment of twenty per cent of the purchase price within fifty days after the date of his certificate of location.

Much closer in their facts to the case at bar, and in our judgment, determinative of it, are the cases holding that section 3 of article XVII of the constitution of 1879, providing that state lands suitable for cultivation shall be granted only to actual settlers, operates as a restriction on applications made before, as well as after, the constitution took effect. The first of these cases was *Johnson* v. *Squires,* 55 Cal. 103. That was an action to determine a contest over the right to purchase state lands. The plaintiff's application, made prior to the adoption of the constitution complied, as is assumed by the court, with the law in existence when it was made. That law did not limit the right of purchase to actual settlers, and plaintiff was not such settler. It was held that, by reason of the constitutional provision, he was not entitled to purchase. Referring to said provision, the court said: "This language is clear and explicit, and operates as well on applications made before as after the constitution took effect. As the case shows, appellant has paid no portion of the purchase money, nor has his proposition to buy been accepted by the agent of the state. He

has parted with nothing of value, and can neither assert that the state constitution has 'impaired the obligation' of a *contract,* or deprived him of property without due process of law." This case was cited with approval in *Dillon* v. *Saloude,* 68 Cal. 267, [9 Pac. 162], and was followed in *Urton* v. *Wilson;* 65 Cal. 11, [2 Pac. 411] ; *Mosely* v. *Torrence,* 71 Cal. 318, [12 Pac. 430], and *Manley* v. *Cunningham,* 72 Cal. 236, [13 Pac. 622].

The same principle was applied in *Klauber* v. *Higgins,* 117 Cal. 451, [49 Pac. 466]. There the appellants claimed title to the lands in controversy by virtue of patents issued upon applications for purchase made under the act of March 28, 1868 (Stats. 1867-68, p. 507). The property consisted of tide-lands fronting on the bay of San Diego and was situated within two miles of the city of San Diego. On April 4, 1870 (Stats. 1869-70, ch. 573), the legislature amended section 70 of said act of 1868 by excluding from the provisions of the act all swamp and overflowed, salt-marsh, and tide-lands ". . . within two miles of any town or village." Assuming that the original act authorized the sale of the lands in question, the court held that the amendment took from the officials of the government the right to sell said land, no right to the same having vested in the appellants prior to their making a payment. Says the court: "The applications under which appellants claim were not approved until November, 1871, and no payments were made by the applicants prior to that time. They therefore had made no contract with the state, and had no vested rights until that time." The opinion does not disclose the exact date of the filing of the applications and a copy of the record is not, at the moment, accessible to us. It clearly appears, however, from the opinion itself, as well as the reported abstract of arguments of counsel, that the applications preceded the amendment of the statute. If this had not been so, there would have been no occasion for the court to hold that the right of the applicants did not vest until payment. Furthermore, the argument of counsel for respondents, on page 454, concedes that the applications to purchase were made before the passage of the amending statute.

The effect of these decisions is to put the applicant for the purchase of state lands in a position similar to that of one who

enters federal lands under the pre-emption laws of the United States. Under those laws it was uniformly held that no right, as against the United States, vested in a claimant until he had made or tendered the required payment. Up to that time, the land might be withdrawn from sale. (*People* v. *Shearer*, 30 Cal. 650; *Hutton* v. *Frisbie*, 37 Cal. 475; *Frisbie* v. *Whitney*, 9 Wall. 187; *Yosemite Valley Case*, 15 Wall. 77, affirming *Low* v. *Hutchings*, 41 Cal. 634; *Whitney* v. *Taylor*, 158 U. S. 58, [15 Sup. Ct. 796].) In *Pennoyer* v. *McConnaughy*, 140 U. S. 1, [11 Sup. Ct. 699], the supreme court of the United States intimated, but found it unnecessary to decide, that an Oregon statute similar to that contained in the above-quoted sections of the Political Code, was to be regarded as having the same effect as the pre-emption laws, i. e., of conferring a vested right only upon payment or tender of part of the purchase price.

Under these views, a granting to the plaintiff of the relief sought would be of no avail. If it be urged that private rights will not be permitted to be defeated by the wrongful action of government officials, plaintiff could at most, assuming the rejection of his application to have been unauthorized under the old law, be entitled to have his application received, filed, and approved. Conceding, for argument's sake, that the law, as it stood at the time of his application, authorized the purchase of these lands, he would find himself in the position of having applied to purchase lands which the state has decided to withhold from sale. He would have no vested right which could prevent such withholding. Whether or not the superior court and the district court of appeal rightly held that plaintiff was entitled to his writ of mandate, it is plain that, as the law now reads, no such writ should issue. It would assume to require the surveyor-general to perform a mere preliminary act which could not be pursued to an effective termination without a violation of the law.

It is therefore a matter of no concern to the applicant to have this court decide whether sections 3440 and 3443, prior to the enactment of 3443a, authorized the sale of lands of the character here involved. That question, one of great importance, will properly require determination when it is raised in a case involving the claims of applicants who had received patents or had made partial or full payments, before section

3443a was made a part of the code. It seems to us to be more fitting and proper to postpone its consideration until it shall be presented in a case in which parties really interested in its disposition may have an opportunity to be heard.

The judgment and order are reversed.

Angellotti, J., Shaw, J., Lorigan, J., and Henshaw, J., concurred.

Rehearing denied.