[L. A. No. 14751. In Bank.—July 1, 1935.]

FRANK E. ATWOOD et al., Appellants, v. CHAUNCEY R. HAMMOND, as County Auditor, etc., et al., Respondents.

H. C. Gardiner for Appellants.

Alfred Haines and Sanders & Jacques, as *Amici Curiae* on Behalf of Appellants.

C. L. Byers, City Attorney, H. B. Daniel, Deputy City Attorney, Thomas Whelan, District Attorney, and James B. Abbey, Deputy District Attorney, for Respondents.

SEAWELL, J.—Plaintiffs appeal from a judgment for defendants entered after defendants' demurrer to the amended complaint had been sustained without leave to amend. Plaintiffs are residents and taxpayers of the county of San Diego, and taxpayers of the city of San Diego. They name as defendants the city of San Diego, the county of San Diego, the auditor of the city of San Diego, and the auditor of the county of San Diego.

The action involves a tract of reclaimed land, described in the complaint as containing eighteen acres, which formerly was covered and uncovered by the flow and ebb of the tides in the bay of San Diego. The city and the county of San Diego propose to establish a civic center upon said property. Plaintiffs contend that an act of the legislature of 1929 purporting to grant said eighteen-acre parcel to the city and county as joint owners is invalid for the reason that it is part of a larger area previously conveyed by the state to the city as sole owner, and that said tract remains subject to the public trust or easement for commerce, navigation and fishing, and cannot be diverted to uses not connected therewith, such as a civic center.

We are of the view that upon the allegations of the complaint it appears that title to said land was vested in the city as sole owner at the commencement of the action. But it does not follow therefrom that plaintiffs were entitled to a decree that it remained subject perpetually to the public trust for commerce, navigation and fishing. They were not entitled to such a decree, nor to enjoin the city and

county from taking steps to cause title thereafter to be vested in them jointly. Their prayer that the auditor of the city and the auditor of the county be restrained from each paying $500 to the state to comply with the act purporting to grant the eighteen-acre parcel to the city and county as joint owners will be considered hereinafter.

In 1911 the state granted to the city of San Diego tidelands of the bay of San Diego lying bayward of said city. (Stats. 1911, p. 1357.) The grant was made upon the express condition that the city expend $1,000,000 in harbor improvements within three years, which time was later extended. In connection with the work of harbor improvement, a section of the harbor was dredged and by deposit of the dredged material on the tidelands a portion of the tract granted was reclaimed. The eighteen-acre tract which is the subject of this action is included in the area thus reclaimed. It is alleged in the complaint that a bulkhead line was established by the United States government in 1912 two hundred feet in front of or bayward from the lands which are the subject of this action. A seawall was erected in front of the eighteen-acre tract along the bulkhead line as thus fixed. The strip of land two hundred feet wide which separates the land which is the subject of this action from the seawall has, in compliance with the grant, been set aside by the city for a municipal belt line railroad, to be operated in conjunction with the system of docks in the harbor.

In 1917 the legislature found that the city had fully and carefully performed each and all of the terms and conditions of the grant of 1911, and that title to the lands therein described was vested in the city subject only to the public trust for navigation, commerce and fishing. (Stats. 1917, p. 1943, Senate Concurrent Resolution.) In 1929 the legislature passed two acts applying to lands granted by the Act of 1911. By the first enactment in 1929 (Stats. 1929, chap. 642, p. 1058) it declared that all lands included in the original grant which lay shoreward from the bulkhead line as established by the United States government had ceased to be tidelands, and were free from all trusts and restrictions imposed by the Act of 1911, as amended, except the restriction against alienation. This act provided that it should not limit, supersede or affect any law

to be passed at the same session granting any portion of the lands described to the city and county jointly for county and municipal purposes. By a subsequent act of the same session (Stats. 1929, chap. 778, p. 1550), the legislature purported to grant the eighteen-acre tract which is the subject of this action, and which was part of the larger area previously granted by the state to the city as sole owner, to the city and county as joint owners, "to be used only for county and municipal purposes, including the erection and maintenance thereon of county and municipal buildings".

█ Defendants city and county of San Diego contend that the Act of 1911 was not a conveyance of land to the city as sole owner, but only a grant to it of a right to make improvements in the harbor, with the right to lease wharves, piers and other harbor facilities, and to collect rents therefor. The language of the act refutes this contention. The title of the act describes it as "An act conveying certain *tidelands* and lands lying under inland navigable waters situate in the Bay of San Diego . . . " (Italics supplied throughout.) The preamble of the act refers to the power of the state "to *convey* to municipalities limited and defined areas of such *lands*" in the interests of commerce, navigation and fishing. By its terms the act *grants* and *conveys lands* lying between the line of mean high tide and the pierhead line in the bay. Provisions prohibiting alienation of the *lands* described, and providing for reversion to the state of "the *lands* by this act conveyed", upon a violation of any of the provisions of the act, are inconsistent with defendants' position that no lands were granted to the city. Likewise inconsistent, is the legislative resolution of 1917, which contains this provision: "Title to the tidelands therein described [in Act of 1911] is vested in the city of San Diego subject only to the public trusts therein enumerated." The Act of 1917 authorized the city to convey 500 acres to the United States government free of the public trust. Even the Act of 1929 purporting to convey the eighteen-acre tract to the city and county as joint owners described it as "a portion of the *land heretofore granted* to the city of San Diego".

Grants of waterfront lands similar in form and expression to the Act of 1911 have been interpreted repeatedly as con-

veyances to municipalities of tidelands subject to the public
trust for navigation and commerce. (Stats. 1911, p. 1254,
*City of Oakland* v. *Larue Wharf etc. Co.*, 179 Cal. 207 [176
Pac. 361]; *City of Oakland* v. *E. K. Wood Lbr. Co.*, 211 Cal.
16 [292 Pac. 1076]; Stats. 1909, p. 665, *Cimpher* v. *City
of Oakland*, 162 Cal. 87 [121 Pac. 374]; Stats. 1911, p. 1304,
*City of Long Beach* v. *Lisenby*, 175 Cal. 575 [166 Pac. 333];
*Strand Improvement Co.* v. *City of Long Beach*, 173 Cal. 765,
770 [161 Pac. 975]; Stats. 1911, p. 1256, *City of Los Angeles* v.
*Anderson*, 206 Cal. 662 [275 Pac. 789]; *Los Angeles* v.
*Pacific Coast Steamship Co.*, 45 Cal. App. 15 [187 Pac.
739]; see index to Deering's General Laws, 1931, title
"Waterfront", where statutes affecting particular towns
are listed; 18 Cal. Jur. 1030; 26 Cal. Jur. 334.) That
there may be a delegation of the right to make harbor im-
provements, without a conveyance of the legal title in the
land is recognized in *People* v. *Banning Co.*, 166 Cal. 630
[138 Pac. 100]. But the grant made to the city of San
Diego by the Act of 1911 is not of such nature.

　　Section 3, article XV of the Constitution does not pro-
hibit grants of tidelands to municipal corporations. (*City
of Oakland* v. *E. K. Wood Lbr. Co.*, *supra; Cimpher* v.
*City of Oakland*, *supra*.) Said section withholds tidelands
within two miles of any incorporated city or town, and
fronting on navigable waters from grant or sale to *private*
persons, partnerships or corporations, and an attempted
grant in violation of said provision is void. (*People* v. *Cali-
fornia Fish Co.*, 166 Cal. 576 [138 Pac. 79].) Upon a
grant by the state to a municipality it will hold the land
subject to the restrictive provisions of section 3, article XV.
(*Cimpher* v. *City of Oakland*, *supra; 26 Cal. Jur. 335; 18 Cal.
Jur. 1035.)

　　We do not regard the fact that the legislature by
amendments to the Act of 1911 in 1913, 1915 and 1917
(Stats. 1913, p. 77; Stats. 1915, p. 1323; Stats. 1917, p. 916)
changed and added to the terms and conditions upon which
the city was permitted to lease tidelands and harbor facili-
ties, and enlarged the rights of the city by permitting it
to grant franchises as well as leases, as negativing a grant
of title to the city by the Act of 1911. Upon a grant to a
municipality, subject to the public trust, and accompanied
by a delegation of the right to improve the harbor and exer-

cise control of harbor facilities, as in the case herein, the lands are not placed entirely beyond the supervision of the state, but it may continue to protect the public interests. (See *Illinois Central R. R. Co.* v. *Illinois,* 146 U. S. 387 [13 Sup. Ct. 110, 36 L. Ed. 1018].) The question as to how far the state may go in changing regulatory provisions contained in an original granting act is not involved in this case. Neither party objects to the amendments made in 1913, 1915 and 1917.

Defendants cite *Dean* v. *City of San Diego,* 275 Fed. 228, and 284 Fed. 970, in support of their contention. The plaintiff Dean, a resident of Louisiana, brought suit in California, claiming title to certain lands below the line of ordinary high tide through ·a conveyance by the city of San Diego in 1871, at which date the city had no title to the land in question. He claimed that title acquired by the city under the Act of 1911 inured to his benefit. Both the district court and the circuit court pointed out the express restriction against alienation in the grant of 1911. We think the decisions of both courts, properly construed, go no further than to hold that the city did not acquire a title in 1911 which would inure to the benefit of the plaintiff. The tidelands were granted to the city subject to the public trust for navigation and commerce, and while they remained subject to said trust, by virtue of the provisions of section 3, article XV of the Constitution, as well as the express restrictions against alienation in the grant, the title acquired by the city could not feed the title of plaintiff on the theory of estoppel by deed.

In the light of our conclusion that the state, having conveyed the tideland area to the city as sole owner in 1911, could not thereafter, in 1929, grant said land to the city and county as joint owners, we now pass to consider the validity of other provisions in the legislation of 1929 which freed the eighteen-acre tract from the public trust for navigation, commerce and fishing, and declared that it be used only for county and municipal purposes, including the erection of county and municipal buildings. Plaintiffs contend that all lands granted by the Act of 1911 must remain subject perpetually to the public trust for navigation and commerce.

In the above discussion we have considered the validity of grants of tidelands by the state to municipalities subject to the public trust for navigation and commerce. We have now to consider the authority of the state to terminate said trust as to an area of reclaimed land. The reclamation of this area was a proper exercise of the authority to make harbor improvements conferred by the state on the city in the Act of 1911. The lands were reclaimed by the deposit of material removed in dredging and deepening the harbor. The Act of 1911 required that the city maintain accommodations for ocean-going vessels of the largest class, with a depth of water at piers of not less than thirty-five feet. The Act of 1917 expressly found that the city had performed all conditions of the grant of 1911, and confirmed title in the city. By establishing the bulkhead or pierhead line in the harbor in 1912, the federal government consented to reclamation of land shoreward of such line. (*People* v. *California Fish Co.*, 166 Cal. 576, 599, 600 [138 Pac. 79].) But the establishing of a harbor line does not of itself prior to reclamation and further action by the state abrogate the trust for navigation and commerce subject to which the state, or municipality, holds title to tidelands. (*People* v. *Kerber*, 152 Cal. 731, 736 [93 Pac. 878, 125 Am. St. Rep. 93]; *People* v. *California Fish Co.*, 166 Cal. 576, 599 [138 Pac. 79]; 26 Cal. Jur. 309.)

 In the case herein, the eighteen-acre tract which is the subject of this action has been reclaimed. By virtue of the fact that it is no longer tideland, covered and uncovered by the tides, the public easement which pertains to tidelands—a right to fish in and navigate in the waters above the land—can, in the nature of things, no longer persist. But, nevertheless, reclaimed lands may remain dedicated to public uses connected with and which tend to promote commerce, navigation and fishing. (*People* v. *California Fish Co.*, 166 Cal. 576, 600 [138 Pac. 79].) The reclamation of tidelands aids commerce and navigation by providing space for piers, docks, wharves and warehouses. In *City of Oakland* v. *Williams*, 206 Cal. 315 [274 Pac. 328], we held that the leasing of a municipally-built warehouse on filled land to a private corporation engaged in packing, processing and shipping products was a public use in furtherance of the trust for navigation and commerce,

subject to which the city held title to the lands. The building and leasing of the warehouse was part of a comprehensive plan adopted with the purpose of improving and developing a harbor, and providing facilities to common carriers by water, who are themselves engaged in fulfilling their obligation to the public.

The grant to the city of San Diego in the instant case was expressly made in the interests of commerce, navigation and fishing, and the senate resolution of 1917, enacted after the city had completed its $1,000,000 program of harbor development, expressly found that the title of the city was subject to the trust for those purposes. In this situation we conclude that the reclamation of these tidelands in the bay of San Diego did not *ipso facto* terminate the public trust for navigation and commerce, which remained, although with uses changed from those which attached while the land was covered and uncovered by the tides. But we are further of the view that it was competent for the state by legislative action to terminate this public trust as to the eighteen-acre parcel, which constitutes but a small part of the area granted to the city.

The rule is broadly stated in a number of decisions, following the language of the Supreme Court of the United States in *Illinois Central R. R. Co.* v. *Illinois,* 146 U. S. 387, 452, 453 [13 Sup. Ct. 110, 36 L. Ed. 1018], that "grants of parcels of lands under navigable waters, that may afford foundation for wharves, piers, docks and other structures in aid of commerce, and grants of parcels which, being occupied, do not substantially impair the public interest in the lands and waters remaining" are sustained as irrevocable conveyances free of the public trust. (*City of Oakland* v. *Oakland Water Front Co.,* 118 Cal. 160, 183 [50 Pac. 277] ; *People* v. *California Fish Co.,* 166 Cal. 576, 585 [138 Pac. 79] ; *Messenger* v. *Kingsbury,* 158 Cal. 611, 613 [112 Pac. 65] ; *Forestier* v. *Johnson,* 164 Cal. 24, 30 [127 Pac. 156] ; *Boone* v. *Kingsbury,* 206 Cal. 148, 183, 186, 188 [273 Pac. 797] ; 26 Cal. Jur. 328.) One of the most notable examples of a series of grants free of the public easement is provided by the tranfer of lands formerly covered by the waters of San Francisco Bay, which to-day constitute one of the principal business districts of the city of San Francisco. The legislative acts authorized the sale and transfer of lands then

submerged, but lying shoreward of a waterfront or harbor line established in said bay. (Stats. 1853, p. 219; 1855, p. 226; 1867–68, p. 716.) These acts have been interpreted as authorizing sales and transfers into private ownership, free of any easement in the public for uses connected with navigation and commerce. (*City of Oakland* v. *Oakland Water Front Co.*, *supra; Eldridge* v. *Cowell*, 4 Cal. 80; *Knudson* v. *Kearney*, 171 Cal. 250 [152 Pac. 541]; *Shirley* v. *City of Benicia*, 118 Cal. 344 [50 Pac. 404]; *Bolsa Land Co.* v. *Burdick*, 151 Cal. 254, 261 [90 Pac. 532, 12 L. R. A. (N. S.) 275]; 26 Cal. Jur. 336.)

▇▇▇ The grants of lands in the bay of San Francisco antedated the enactment of sections 2 and 3, article XV of the Constitution, and the statutory provisions of similar effect which preceded the constitutional sections. Section 3, as noted above, withholds all tidelands within two miles of any incorporated city and fronting on navigable waters from grant or sale to private persons, partnerships or corporations. The effect of section 2 is to make all grants of tidelands subject to the public easement. (*People* v. *Southern Pacific R. R. Co.*, 166 Cal. 614 [138 Pac. 94].) In the case herein there has been no attempt to alienate the eighteen-acre parcel which is the subject of this action from public ownership, but, rather, an effort to require that it be used only for purposes not connected directly with navigation, or commerce, that is, for county and municipal buildings. However, in view of the manifest purpose of sections 2 and 3, article XV, the prohibition against alienation necessarily implies a prohibition against freeing such tidelands from the trust for navigation and dedicating them to other uses while they remain tidelands. But said section cannot be interpreted to forbid the reclamation of lands which may be filled in as the result of a highly beneficial program of harbor development. It applies to tidelands, that is, to lands covered and uncovered by the flow and ebb of the tides, and, it has been held, to lands which are continuously submerged. It does not in terms apply to lands which, through reclamation, are no longer covered and uncovered by the tides, and have ceased to be tidelands. We are of the view that it was competent for the legislature upon finding that the eighteen-acre tract was "not longer required for

navigation, commerce or fisheries'', to free it from the public easement for those purposes.

It has been said that the provisions of section 2, article XV, do not deprive the legislature of the power to free a parcel of land which has been reclaimed from the public trust. (*People* v. *California Fish Co.*, 166 Cal. 576, 598 [138 Pac. 79].) A similar interpretation of section 3, article XV, is supported by the court's discussion in *People* v. *Kerber,* 152 Cal. 731 [93 Pac. 878, 125 Am. St. Rep. 93].

While it may be that the inherent nature of the state's title in tidelands and its duty to protect the public interest is such that it could not free from the public trust all reclaimed lands lying shoreward from a bulkhead line, as provided in the earlier 1929 enactment herein, without reserving any land for warehouses or other facilities, this question need not be decided in the case herein. It does not appear whether all lands lying shoreward of the bulkhead line have been reclaimed, nor that the seawall extends the entire length of the grant to the city. The second enactment of 1929, which relates only to the eighteen-acre parcel which is the subject of this action, frees it from the public trust for navigation and commerce. Plaintiff does not allege what proportion of the total area lying shoreward of the bulkhead line or seawall this eighteen-acre parcel constitutes. But the inference is that it is only a very small part of the total acreage. That the total extent of the grant to the city was large is indicated by the fact that in 1917 the state authorized the city to convey 500 acres to the federal government. We cannot interfere with the legislature's decision that the public easement may be abrogated as to this relatively small parcel.

The freeing of this parcel from the public easement did not infringe on any right of the federal government. Although Congress has power to regulate waters as an incident of the expressly granted power to regulate interstate commerce, in the absence of the exercise of this authority, the states have full power over waters and tidelands within their jurisdiction. (*People* v. *California Fish Co.,* 166 Cal. 576, 599, 600 [138 Pac. 79]; *Forestier* v. *Johnson,* 164 Cal. 24, 39 [127 Pac. 156]; *Henry Dalton & Sons Co.* v. *Oakland,* 168 Cal. 463 [143 Pac. 721]; 27 R. C. L. 1324, 1333.) By establishing a harbor line in the bay, as noted

above, the federal government consented to reclamation of lands shoreward of said line. (*People* v. *California Fish Co., supra.*)

██ Chapter 778, Statutes of 1929, which relates particularly to the parcel which is the subject of this action, not only declares it free from the public trust for navigation and commerce, but purports to grant it to the city and county jointly, declares that it shall be used only for county and municipal purposes, including the erection and maintenance of county buildings, and requires that $1,000 be paid to the state in consideration of the conveyance. Thus, the legislative declaration freeing this parcel from the public trust is not a severable provision, but part of a scheme whereby said parcel was to be freed from the public trust for navigation and commerce that it might be dedicated to county and municipal purposes.

We have heretofore held that the grant to the city and the county as joint owners was ineffective, as the state had already conveyed title to the city, subject only to the public trust for navigation, commerce and fishing. Hence the state by unilateral action could not divest the city of its title, nor annex a different use to this eighteen-acre parcel. But the state, the city and the county jointly may agree that if the state frees the parcel from the easement for commerce and navigation, the city shall take steps to cause title to be vested in the city and the county jointly, and said city and county will thereafter hold the land dedicated to county and municipal purposes. By reason of the fact that title was vested in the city, chapter 778 is in effect an offer by the state to free the parcel from the trust for navigation and commerce on condition that the city and the county take steps to cause title to be vested in them jointly and dedicate the land to county and municipal purposes. It was competent for the state, as a condition to its consent to free the parcel from the trust for navigation, to require that it be dedicated to county and municipal purposes. The land had been granted by the state to the city subject to the public trust for navigation, and no compulsion rested upon the state to free this particular parcel from said trust, which remained even though the land was reclaimed.

██ Aside from the allegations of the complaint that the city and the county cooperated to procure the enactment of

chapters 642 and 778, Statutes of 1929, the allegations of the complaint are to the effect that the city and county by ordinance have evinced a desire to accept this offer and to effect a transfer to the city and the county jointly by any means by which it may be accomplished. Plaintiffs pray that said city and the county be perpetually enjoined from effecting such a transfer on the theory that the tract must remain subject forever to the trust for navigation and commerce. Upon the complaint they were not entitled to such a decree.

Plaintiffs refer to the provisions of section 2, chapter VIII of the charter of the city of San Diego (Stats. 1919, p. 1533), which provides for the creation of a harbor fund, to constitute a trust fund for the furtherance of navigation and commerce, in which were to be placed all revenues derived from tideland leases and franchises and other income from harbor improvements, to be devoted to the purposes of the trust. If the eighteen-acre tract which is the subject of this action is used for county and muni-. cipal buildings no revenues will be derived therefrom which will be paid into the harbor fund, plaintiffs contend. The charter provision requires that such revenue as may be derived from tideland leases and harbor improvements shall be placed in the harbor fund. It does not operate as a limitation on the power of the state and city to free from the trust for uses connected with navigation and commerce this eighteen-acre parcel, which the state found was not longer required for commerce, navigation and fishing.

We conclude that one of the purposes of the law in authorizing .the conveyance by the state of its tidelands to municipalities is to promote the general welfare of said municipalities and of the grantor itself. We are unable to see that any detriment will come to the state, the federal government or the people by the dedication of the parcel of land described herein to the proposed uses.

The appellants also sought to enjoin the city and county from each paying $500 to the state to comply with the provisions of chapter 778, Statutes of 1929, which required that $1,000 be paid to the state as a consideration for the conveyance to the city and the county as joint owners. Since the $1,000 payment was expressly required to be made as a consideration for the conveyance to city and the county

jointly, rather than as a payment for the state's consent to free the parcel from the trust for navigation, and since the act could not operate as such a conveyance for the reason that the state had previously conveyed to the city as sole owner, we are inclined to the view that the sum of $1,000 was not due to the state. However, the question whether the city and the county should be enjoined from paying this sum has become moot. Respondent city of San Diego and city auditor of San Diego state in their brief that in fact the sum already has been paid. Respondents county of San Diego and county auditor adopt all allegations of the city's brief as their own. Appellants fail to deny the fact of payment in their reply brief. In this situation respondents' unchallenged statement may be accepted to establish payment. ■■■ The judgment for defendants dissolved the temporary restraining order against payment to the state, and the appeal from the judgment did not stay a self-executing provision, such as that dissolving the temporary restraining order. (2 Cal. Jur. 438–440, and cases there cited.) Appellants cannot enjoin the payment to the state of a sum already paid.

We have hitherto held that the plaintiffs upon the allegations of their complaint were not entitled to the other injunctive relief which they sought. That is, they were not entitled to restrain the city and the county from causing title thereafter to be vested in them jointly. Nor were they entitled to a decree that the land must remain subject to the trust for navigation and commerce. It follows that the judgment for defendants must be, and it hereby is, affirmed.

Thompson, J., Shenk, J., Curtis, J., Waste, C. J., Preston, J., and Langdon, J., concurred.

Rehearing denied.